## Combs, et al. v. Combs, et al.

(Decided September 30, 1919.)

### Appeal from Perry Circuit Court.

1. Appeal and Error—Finding of Chancellor.—We affirm the judgment in this case on the ground that the weight of the evidence supports the judgment of the chancellor.
2. Appeal and Error—Record Condemned for Failure to Index.— Where the clerk fails to index the record in accordance with rule 5 of the court he will be prohibited from collecting his full fee therefor.

MORGAN & NUCKOLS and W. W. BAKER for appellants.

W. C. EVERSOLE for appellees

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

This is a suit by the heirs of Isom Combs against Jackson Combs and William Combs to recover or have their title quieted to a tract of land containing about thirty-eight acres.

The Combs are negroes and Isom was a half-brother of Jackson and William Combs. They were slaves, Isom

being owned by John S. Combs and Jackson and William by his brothers.

About 1867 John S. Combs, who was a large land owner in Perry county, sold to Jackson and William Combs, as they claim, a tract of land containing about three hundred acres on which they settled. It further appears that in 1871 John S. Combs for the recited consideration of $100.00 conveyed to William and Jackson the tract of land on which they had settled a few years before. It also appears that John G. Godsey, who had previously sold this land or a part of it to John S. Combs without making him a deed, joined in the conveyance to Jackson and William Combs. This deed was not put to record until July, 1913, many years after the death of Isom Combs, who died about 1895. Soon after this deed was recorded Jackson and William Combs conveyed to the heirs of Isom Combs sixty-four acres of the land deeded to them by John S. Combs.

In 1915 the heirs of Isom Combs brought suit against Jackson and William Combs to recover one-third of the land, or about one hundred and two acres, that was conveyed to Jackson and William Combs in 1871, upon the ground that their ancestor Isom Combs was the owner of the one-third they sought to recover. As it appears, however, that sixty-four acres of this land they sought to recover had shortly before the suit been conveyed to them by Jackson and William Combs there is only in dispute in this case about thirty-eight acres.

After the case had been prepared for trial the lower court decided that the heirs of Isom were the owners of one-third of the land deeded to Jackson and William by John S. Combs and therefore adjudged that they were entitled to the thirty-eight acres in dispute in addition to the sixty-four acres previously conveyed to them.

In the lower court and on this appeal Jackson and William Combs contend that Isom Combs did not pay any part of the purchase price to John S. Combs for the land they bought from him in 1867 and which was conveyed to them in 1871. They admit that about a year after they bought the land, Isom Combs, with their permission and as their tenant at will, settled on a part of it and remained there with their permission until his death in 1895, and that since his death his children have been in the occupancy of the land. They further say that out

of sympathy for their brother, Isom, and interest in his children after his death, they permitted him and them to occupy and cultivate the land on which Isom settled, and in furtherance of their desire to help his children and heirs they conveyed to them without any consideration except love and affection the sixty-four acres deeded to them in 1913 or '14. They further contend that neither Isom nor his heirs or children ever held any part of the land adversely to them or asserted title thereto but always held it amicably and as their tenants at will.

On the other hand the heirs of Isom in this suit contend that their ancestor, Isom, together with his brothers, Jackson and William, bought for a small sum from his master, John S. Combs, the tract of land on which they settled and each of them was to have one-third of it; that Isom settled on the portion he was to have in 1867 and his brothers settled on the portion they were to have; that Isom lived on the part he settled on until his death, holding and controlling same as his own, and they after his death continued to hold and occupy in the same manner; that neither Isom nor they ever held the land as the tenants of Jackson or William Combs; that Isom marked the boundary, cleared up a good deal of the land, cut the timber on the land and sold it when he wanted to, assessed it for taxation and paid the taxes thereon; that Jackson and William frequently acknowledged his right to the land.

They rested their right to recover on several grounds, but we think their right to it may safely be put upon the ground that they were entitled to it by adverse possession.

The evidence for Jackson and William Combs, which consists principally of their own statements, supports their theory that they bought and paid for the land and out of sympathy and kindness for their brother permitted him as their tenant at will to occupy part of their land during his life and permitted his heirs and children to hold it in the same way after his death; that the holding and possession of Isom and his heirs and children was at all times amicable without any assertion of title on their part until this suit was brought; that they only conveyed to them the sixty-four acres through love and affection and with a desire to permit them to occupy and own the property which they and their ancestor, Isom,

had occupied for so many years. They denied that the boundary to the one hundred and two acres now claimed by the heirs was marked or held adversely to them and say that the sixty-four acres conveyed to the heirs by them covered all the land that Isom or the heirs had ever cleared up, cultivated, cut timber from or exercised any acts of ownership over.

The weight of the evidence, however, shows in a very satisfactory way that Isom, and his children and heirs after his death always claimed the one hundred and two acres and exercised over it all rights of ownership such as cutting and selling timber therefrom, marking the boundary, residing on the land and cultivating it, assessing it for taxation and paying the taxes thereon. It further appears from the testimony of both Jackson and William Combs that Isom with their knowledge frequently cut and sold timber on different parts of the one hundred and two acres, and although they say they objected to him doing so they never took any steps whatever to prevent what he was doing. It is also well shown in the evidence that Isom and his heirs assessed the one hundred and two acres for taxation and paid the taxes thereon.

R. M. Baker, prominent white citizen of Perry county who had no interest in the case, testified he was well acquainted with the Combs negroes and that Isom and William Combs told him that all three of them had bought the land from John S. Combs and had settled on their respective portions of it.

Jerry McIntosh and other disinterested witnesses testified to substantially the same state of facts as Baker did. The only important circumstance corroborating the theory and evidence of Jackson and William Combs is the fact that in 1871 John S. Combs conveyed to them the land without any mention of Isom's name although the deed apparently covered the land upon which Isom was then living. This deed, however, was not recorded by Jackson or William until 1913, thirty-two years after its execution, and it does not appear in any satisfactory way that Isom or his children knew anything about its execution until his heirs and children learned of it after it was put to record in 1913.

But if this deed should be given the full effect to which deeds are entitled and it should be conceded that by virtue of it Jackson and William obtained title to the

land in 1871, the evidence, as we have said, shows that Isom from 1871 until his death and his heirs and children after his death had been in the actual, adverse possession of the one hundred and two acres, claiming it as their own and exercising such acts of ownership to a well de-fined boundary as would give them after this long lapse of time the unquestioned right to hold by adverse posses-sion.

We have time and again in published opinions called attention to rule 5 of the court providing how transcripts shall be made out and indexed, and in a number of cases have imposed against clerks the penalty provided in this rule for failure to comply with it. Lemon v. Com-monwealth, 171 Ky. 822; Anderson v. Sandy Valley Ry. Co., 171 Ky. 740; Allen v. Ligon, 175 Ky. 767; Searcy v. Golden, 172 Ky. 42.

This rule, which is very simple and easily understood, has been in force for several years and copies of the docket containing it are sent three times each year to every circuit clerk in the state. It provides among other things that the index shall show "the name of each wit-ness and the page on which his testimony begins. The index shall also show the page on which the instructions and all deeds, contracts and other exhibits may be found and each deed, contract or other exhibit shall be indi-cated in the index by the name of the grantor and grantee or by some other brief description to show what the paper is."

In this case the depositions of seventeen witnesses appear in the transcript but the index only shows the names of seven. It does not give any information as to the names of the other witnesses or the pages of the record upon which their evidence may be found. There is also a deed in the record that is not indexed at all.

For the failure to comply with this rule there will be deducted from the fee of the clerk for making the transcript the sum of $10.00, and the clerk of this court in taxing the costs of the transcript will deduct this sum from the fee for it.

The judgment is affirmed.