## Howard, Sr. v. Watkins, et al.

(Decided May 5, 1925.)

### Appeal from Bell Circuit Court.

1. Boundaries—Evidence Held Not to Establish Plaintiff's Title on Theory that Original Survey Mistakenly Referred to Wrong Creek or that Name of Creek has Since Changed.—In suit to establish title, under a survey which described land as on Crank's creek, to land situated on creek now known as Puckett's creek, evidence held not to show that surveyor of original grant either mistakenly referred to Puckett's creek as Crank's creek, or that Puckett's creek was then known as Crank's creek.

2. Clerks of Courts—Clerk of Circuit Court Penalized for Failure to Index Exhibits Filed with Depositions.—For failure of clerk of circuit court in preparing appeal record to index exhibits filed with depositions, as required by Court of Appeals Rules, section 5, subsection 6, $50.00 will be deducted from his fees for copying record, as a penalty.

JOHN D. CARROLL and N. R. PATTERSON for appellant.

JAMES GILBERT and JAMES H. JEFFRIES for appellees.

Opinion of the Court by Commissioner Sandidge—
Reversing.

As the issues of this equitable action are presented
to this court by the appeal, it appears that there is in
controversy a tract of land containing approximately
166 acres. Appellant, Jacob Howard, Sr., claims title to
it under a 3,000 acre grant surveyed for William S.
Howard March 6, 1845, and patented to him July 6, 1846.
The appellees, Idress Watkins, and others, claim the title
to the same land under a 3,000 acre grant surveyed No-
vember 2, 1795, for Richard Noel and patented to Joseph
Craig, assignee, on May 27, 1797. The appellees here
were plaintiffs below, and to manifest their right to the
relief sought in their petition it was incumbent upon
them to establish that the location of the Joseph Craig
3,000 acre survey when properly made embraces and
covers the 166 acres of land in controversy. The chan-
cellor adjudged that that survey when properly located
covers the land in dispute. While there is in controversy
only a comparatively small tract of land, we find from
the record that the location of many thousand acres of
land has been called into play as bearing upon the ques-
tion in issue. As frequently is true we find that there is
one outstanding question around which the entire con-
troversy centers. The land in controversy is located in
Bell county, Kentucky, on a large creek now known as
"Puckett's creek." The chancellor adjudged that the
Joseph Craig 3,000 acre grant is located on that creek.
The description of that tract of land, as set forth in both
the survey and the patent, describes it as "3,000 acres of
land lying on Crank's creek, a branch of Cumberland
river." It further recites it "to adjoin John Latham's
entry of 1,000 acres on the upper line on the creek," and
"beginning on the north side of the creek at the upper
end of the clover bottom on an ash tree marked W. H."
From the foregoing quotations, descriptive of the loca-
tion of the 3,000 acre tract of land, it becomes apparent
and both parties concede that the chief question for us
is to determine whether or not the "Crank's creek"
mentioned in the survey and patent is the same creek
which now is known as "Puckett's creek," or whether
or not the surveyor mistakenly in describing this land
called what was then known as Puckett's creek, Crank's
creek.

In the great amount of surveying that was done in
the preparation of this cause no surveyor and no wit-

ness claims to have found any of the timber marked as corners or line trees on the Joseph Craig 3,000 acre boundary. There is some testimony in the record to the effect that formerly there stood at or near the point made the beginning corner of the survey as located for appellees an ash tree. This testimony came from a witness more than 80 years of age. He, however, did not claim ever to have observed that that tree was marked as a corner or ever to have heard anyone claim that it was so marked. None of the appellees who now claim the land in controversy under the Joseph Craig 3,000 acre grant ever heard of that grant or knew that it existed until within the last ten or fifteen years. That is true although they and their ancestors for some three generations have lived upon lands located on Puckett's creek. Their ancestors laid warrants upon and took patents from the Commonwealth to other tracts of land lying within the Joseph Craig 3,000 acre grant if it should be located upon that creek, and lived upon and clearly from the testimony claimed to own only to the boundary of their junior grants.

On September 12, 1798, there was surveyed for John Bailey 410 acres of land and a patent issued to him for same February 7, 1801. That tract of land is described as "beginning at an ash tree marked 'W. H.,' standing on the north bank of Puckett's creek." It seems to be generally conceded that the maps filed with the record in this case represent the correct or approximately correct location of the John Bailey 410 acre survey. The Joseph Craig 3,000 acre grant recites that it begins "at an ash tree marked 'W. H.' on the north bank of Crank's creek," and the John Bailey 410 acres grant recites that it begins "at an ash tree marked 'W. H.' standing on the north bank of Puckett's creek." It is insisted for appellees that the ash tree referred to as the beginning corner of the Bailey survey is the same ash tree referred to as the beginning corner of the Joseph Craig 3,000 acre survey and that the location of the Bailey survey and its beginning corner locates the beginning corner of the Craig survey. We find that William Henderson, a deputy surveyor, made both the Joseph Craig 3,000 acre survey and the John Bailey 410 acre survey, the latter being made less than three years after the former was made. The fact that the Bailey survey was said to begin on an ash marked "W. H." does not indicate that it had previously been so marked.

If the ash tree which was made the beginning corner of the second survey had been the beginning corner of the former one, undoubtedly it would have been marked as such. It hardly seems probable that the same surveyor starting the second survey on the same tree less than three years after having marked it as the beginning corner of the Craig survey would have failed to note that fact. The John Bailey survey does not mention the Craig survey, nor do any of its lines run coincidentally with any of the lines of the Craig survey. It does not seem probable that the same surveyor in 1795 would call the creek "Crank's creek" and in 1798 would call it "Puckett's creek" if the two surveys were located on the same creek.

Two days after making the 3,000 acre survey on Crank's creek, under which appellees claim, the survey being made for Richard Noel and the patent subsequently issuing to Joseph Craig under an assignment, the same surveyor, with the same chain carriers, surveyed for the same Richard Noel another tract of 3,000 acres. It is described as "beginning at the left side of the Cumberland river on the west side of a gully that makes out of Crank's creek into the river at John Latham's lower corner, 2 beeches and a poplar." It will be observed that this survey, as did the other 3,000 acre survey made two days previously, speaks of the creek as "Crank's creek." Appellees insist that the testimony in the record unquestionably establishes that the second 3,000 acre survey made for Richard Noel is properly located as beginning just below the mouth of the creek now known as Puckett's creek, and that as the two surveys were located on the same creek and made within two days of each other there is left no room for doubt that the surveyor either mistakenly called what was then Puckett's creek, Crank's creek, or that the creek now known as Puckett's creek then was known as Crank's creek. There is in the record the testimony of several witnesses who own lands on the Cumberland river below the mouth of Puckett's creek who testify that their titles run back to the Richard Noel 3,000 acre survey made November 4, 1795. The patent for the 3,000 acre Noel survey which began below the mouth of the creek was issued to Richard Noel by the Commonwealth of Kentucky on May 27, 1797. There was filed in the record as evidence a copy of the deed by which the other children of Richard Noel conveyed to one of his sons the

3,000 acre grant, under which those now owning lands located on the river below the mouth of Puckett's creek claim title. That deed, dated April 23, 1822, describes the land as "a certain tract or parcel of land lying and being in Harlan county, in the state of Kentucky, on Cumberland river, 3,000 acres, being a patent of 3,000 acres granted to their father, Richard Noel, by patent from the Governor of Kentucky, which patent bears date the 13th day of July, 1795." The Richard Noel 3,000 acre survey said to begin on the gully leading off from the mouth of Crank's creek was patented by the Commonwealth to Richard Noel on the 27th day of May, 1797. It thus appears that Richard Noel had two 3,000 acre grants located on Cumberland river, and, instead of holding under the Richard Noel survey made November 4, 1795, which was patented to him May 27, 1797, which describes its beginning corner as being near the mouth of Crank's creek, the witnesses who have testified in this record, who own the lands lying on Cumberland river immediately below the mouth of Puckett's creek, are claiming under the Richard Noel patent dated July 13, 1795.

It will be observed that the Richard Noel 3,000 acre grant which was surveyed November 4, 1795, and patented May 27, 1797, which appellees insist begins immediately below the mouth of Puckett's creek, although as its description is given it is said to begin immediately below the mouth of Crank's creek, recites that it begins at John Latham's lower corner, two beeches and a poplar. The 3,000 acre survey made for Richard Noel two days previously recited in its general description that it was 3,000 acres of land "lying on Crank's creek, a branch of Cumberland river, to adjoin John Latham's entry of 1,000 acres on the upper line on the creek." We find in the record copies of the John Latham 1,000 acre survey and patent referred to in these two Richard Noel surveys. The John Latham 1,000 acre survey was made on March 27, 1788. If the first 3,000 acre survey made for Richard Noel on Crank's creek under which appellees claim was actually located on Puckett's creek, since it says it was so laid as "to adjoin John Latham's entry of 1,000 acres on the upper line on the creek," and if the second Noel 3,000 acre survey which recited that it begins "on the left side of the Cumberland river' on the west side of a gully that makes out of Crank's creek into

the river at John Latham's lower corner, 2 beeches and a poplar,'' was actually located to begin on a gully that makes out of Puckett's creek, it would necessarily follow that the John Latham 1,000 acre entry referred to in the two patents would lie between the two surveys and in such a way as to fit the creek. The John Latham survey was assigned to Christopher Acklin, and the following is the general description of the tract of land: ''Lying and being in the county of Lincoln on the south side of Cumberland river and on both sides of Crank's creek, including Cathrion's improvement, and bounded as follows, to-wit: Beginning on the south side of a gully on the west side of the creek at a poplar and 2 birches.'' Note the difference in the description of the two beginning corners. The Latham 1,000 acres begins on ''a poplar and 2 birches'' described as standing ''on the south side of a gully on the west side of the creek.'' The Noel 3,000 acres begins on ''a poplar and 2 beeches'' described as standing on the ''left side of Cumberland river on the west side of a gully.'' If we locate the Richard Noel 3,000 acre survey which begins on the ash marked ''W. H.'' and the Richard Noel 3,000 acre survey which begins on the side of the gully at two beeches and a poplar, as appellees claim they should be, on Puckett's creek, and then undertake to locate the John Latham 1,000 acre survey to begin on the beginning corner of the second Richard Noel 3,000 acre survey so located, when the field notes of the Latham survey are run from that point the survey will not extend in the direction of the 3,000 acre Richard Noel survey which begins at an ash tree marked ''W. H.'' and will not include lands on both sides of Puckett's creek. Whereas, the first line is recited to run from the beginning corner ''south 50 degrees east 170 poles crossing the creek at the mouth to two sugar trees on the bank of the river,'' if we locate the beginning corner of that line below the mouth of Puckett's creek and run the course and distance called, the line will not run so as to cross the creek at its mouth or so as to reach the bank of the river. In fact, it runs directly from and at approximately a right angle to the river. The second call reads: ''Thence S. 26 degrees E. 74 poles to 2 buckeyes and a sugar tree; thence leaving the river.'' It thus will be observed that the Latham survey locates the second corner, ''2 buckeyes and a sugar tree,'' on the river. The second line when the survey is run from the beginning corner as lo-

cated below the mouth of Puckett's creek does not run to or in the direction of the river but directly from it. Seizing upon the reference to "Cathrion's improvement," in the descriptive portion of the Latham survey, appellees have proved that there formerly lived on Puckett's creek a "Catherine Risner" who lived upon a small tract of land on Puckett's creek containing about 30 acres, and they insist that it was her improvement which was referred to in the Latham survey and patent. We find, however, that if a survey of the Latham 1,000 acre grant is made from the beginning corner located below the mouth of Puckett's creek, as appellees claim it properly is located, that survey does not extend in the direction of the place where Catherine Risner formerly lived and would not include her improvement. Hence, it hardly seems probable that it was Catherine Risner's home the surveyor referred to when he spoke of "Cathrion's improvement" in the John Latham survey. It is frankly admitted by all the surveyors that the John Latham 1,000 acre survey can not be located on Puckett's creek so as to fit that creek and locate the beginning, first and second corners on the river as the survey says they were located without changing the course of all of the lines of the survey. In addition it is to be noted that if the courses of all the lines of that survey should be changed so as to locate it on Puckett's creek to fit the creek the survey would extend much farther up the creek than the point where appellees locate the ash tree marked "W. H.," the beginning corner of the 3,000 acre grant under which appellees claim, and much of the land in controversy—if not all of it—would be included in the boundary of the John Latham 1,000 acre survey. That would defeat appellees' claim of title under the 3,000 acre grant, because the former was carried to patent before the latter. Therefore the evidence all seems to negative the contention that the Latham 1,000 acre survey was laid upon lands on Puckett's creek.

Bearing in mind that the Latham 1,000 acre survey recited that it covered lands lying on the south side of Cumberland river on both sides of Crank's creek, we find that survey was made March 27, 1788. We find that on March 28, 1788, the following day, the same surveyor surveyed for the same John Latham two surveys, one for 200 acres and one for 300 acres; and on the next day, March 29, 1788, the same surveyor surveyed for the same John Latham a 250 acre survey, all three of which

adjoin each other and all of which recite that they lie on Puckett's creek in Lincoln county, Kentucky. It thus becomes apparent that there were two creeks at that early day, one known as "Crank's creek" and the other known as "Puckett's creek." It does not seem possible that the same surveyor on one day would locate a 1,000 acre tract of land on Puckett's creek and call it "Crank's creek" and on the following two days locate three other surveys on the same creek and call it "Puckett's creek." While the maps filed in this record do not show the location of the three surveys made for Latham, which recite that they lie on Puckett's creek, the evidence of one of the surveyors makes it clear that they were located on the creek now known as "Puckett's creek," and lie within the boundary of the Richard Noel 3,000 acre survey under which appellees claim title to the lands in controversy; and there is no testimony in the record disputing that fact. However, those three surveys, although they were made and the patents issued prior to the survey and patent of the 3,000 acre survey under which appellees claim the lands in controversy, do not cover any of same. We find from the record that on March 31, 1788, the same surveyor made for the same John Latham a 600 acre survey which by the instrument itself is recited to lie about three miles above the mouth of Crank's creek. So that it appears that on March 27th and on March 31, 1788, there were surveyed for Latham by the same surveyor a 1,000 acre survey and a 600 acre survey which located the surveys by reference to Crank's creek; while on March 28th and 29th, 1788, there were surveyed for him by the same surveyor three tracts of land which were located by reference to Puckett's creek. As heretofore shown, the 1,000 acre survey which located itself by reference to Crank's creek can not be located on Puckett's creek, as appellees insist it should be done, so as to fit the river and that creek without disregarding altogether the courses of every line of the survey, and, due to the fact that in a period of four days the same surveyor for the same man located five surveys, three of which called for Puckett's creek and two of which called for Crank's creek, it seems utterly impossible to conclude that the surveyor had reference to the same creek when he called it in two instances "Crank's creek" and in three instances "Puckett's creek." It seems a great deal more reasonable to conclude that there were two different creeks, one known as Crank's creek and

one known as Puckett's creek; and that the surveys made in that early day which located their lands on Crank's creek meant what they said and were laid upon lands on Crank's creek and not on Puckett's creek, as appellees contend.

The appellees, claiming the lands in controversy under a chain of title running back to the first Richard Noel 3,000 acre survey, assigned to and patented in the name of Joseph Craig, filed as part of their chain of title a deed, dated October 27, 1810, from Joseph Craig and John Logan to John Howard, conveying to him 200 acres of land. The deed recites that the tract of land lies on Richland creek. The boundary is given by metes and bounds. Two lines, as the boundary is given, recite that they cross Puckett's creek. The beginning corner is said to be Samuel Ross' northeast corner. Appellees insist that that 200 acre boundary was carved from the Craig 3,000 acre grant and covers the land in controversy, and that the reference to Puckett's creek in the boundary definitely fixes that as the creek on which the Craig 3,000 acre grant was located. No surveyor and no other witness has attempted to locate the 200 acre boundary contained in that deed. None of its lines run coincidentally with any of the lines of the Craig 3,000 acre grant. The Puckett's creek on which the lands in controversy lie is the main creek. It is shown to have a number of tributaries, none of which, as appears from the testimony, ever was called Richland creek. No Samuel Ross is shown ever to have lived or owned lands upon that creek. Since the 200 acres as bounded in the deed above lay on both sides of the stream therein referred to as Puckett's creek, if that had been the main creek, it seems probable that the tract would have been described as lying on Puckett's creek and not on Richland creek. As described it seems much more reasonable to conclude that the Richland creek referred to in the deed was the main creek and that the Puckett's creek referred to was one of its tributaries. No reason is given why John Logan should have joined in the deed with Joseph Craig if it was a part of the latter's 3,000 acre grant being conveyed, for he does not appear ever to have conveyed an interest in it to Logan. The same John Howard to whom Craig and Logan conveyed the 200 acre tract above had surveyed for himself 100 acres of vacant and unappropriated land on January 20, 1818. Patent for same was granted to him June 21, 1819. The location of

that grant is not questioned. It is located on the stream now called Puckett's creek. The survey and patent both recite that it lies on Puckett's creek. It is conceded to be correctly located on the maps made by appellees' surveyors, and filed with their depositions. If the 200 acre boundary described in the deed above should be so located on the creek now known as Puckett's creek as to cross that stream twice as the deed recites and as to include the land in controversy, which appellees must do to succeed, since they are claiming under that deed, the 200 acre tract would cover the entire 100 acre John Howard survey. It does not seem reasonable that if the deed of October 27, 1810, conveyed that land to him John Howard would have in 1818 surveyed it as vacant and unappropriated land. John Howard, ancestor of appellees, settled upon his 100 acre survey, built his home, and lived there many years. Following him his descendants have lived there. None of the owners of the John Howard 100 acre tract within the memory of living witnesses have claimed or exercised acts of ownership beyond its boundaries.

Appellees file a copy of the plat of the Noel 3,000 acre survey and insist that it is evidence that the same was laid on lands on Puckett's creek because that plat resembles the plat made showing that survey laid upon lands on what now is called Puckett's creek, and insist that the relative position of the creek and the lines of the survey are the same in both plats. Perhaps there is some resemblance. But we are not impressed that a comparison of the two maps demonstrates any truth upon which we can base an opinion in this case. According to the map copied from the original survey about an equal portion of the land lies on either side of the creek. A single tributary flowed into it from the north and a single tributary flowed into it from the south. The maps prepared by appellees' surveyors showing the Craig 3,000 acre grant laid upon Puckett's creek has about three-fourths of the land on one side of the creek. Six tributaries flow into it from the north, all of which cross the northern line of the survey. A single tributary is shown south of the main creek which does not cross the southern line of the survey. Considering those discrepancies we can not find by comparing the maps any real evidence that the 3,000 acre Craig grant covered lands upon what now is known as Puckett's creek.

The surveyor who ran the lines of the Craig 3,000 acre grant beginning at a point on Puckett's creek, and who made the map most frequently referred to in the testimony in this record and offered by appellees as showing the correct location of that survey, and who testified for appellees, frankly stated that, when he took into consideration all the facts developed in the testimony in this case, including the recitations in the various surveys and patents and title papers filed in evidence, in his opinion and judgment as a surveyor the 3,000 acre survey was not laid upon what is now known as Puckett's creek. Another surveyor or two testifying for appellees, considering all the facts in evidence, gave it as their opinion that the survey was originally laid on lands on what is now known as Puckett's creek. The surveyors who testified for appellant gave it as their opinion that the survey can not be properly located on Puckett's creek. As hereinbefore indicated, no marked timber was found standing at any of the corners or on any of the lines of the 3,000 acre grant under which appellees claim to indicate that its location as made for appellees on Puckett's creek is correct. The surveyors in drawing their conclusions and in forming their opinions as to the proper location of that survey had nothing to base their opinions upon save the facts which we have hereinbefore discussed.

Appellees were the plaintiffs in this lawsuit. To manifest their right to succeed it was incumbent upon them to establish by proof that the 3,000 acre survey under which they claim properly located lies upon what is now known as Puckett's creek. When we take into account all the facts and circumstances introduced in evidence, all those of consequence having been considered herein, we find that there is no conclusive fact or circumstance in evidence upon which to base a judgment that the surveyor who originally located the Craig 3,000 acre grant either mistakenly called the creek on which he laid that survey Crank's creek when it was Puckett's creek, or that the creek now known as Puckett's creek was then known as Crank's creek. Neither are all the facts and circumstances proved, considered together, sufficient for that purpose. The evidence rather establishes that there was then a Crank's creek and a Puckett's creek, two separate creeks, and that the creek now called Puckett's creek was not then called Crank's creek. We are forced to conclude that appellees

as plaintiffs below failed to sustain the burden. It follows that the judgment of the chancellor locating the Craig 3,000 acre grant on Puckett's creek is erroneous. As between appellees claiming under the Joseph Craig 3,000 acre grant and appellant claiming under the William S. Howard 3,000 acre grant as to the 166 acres of land in controversy herein, we have concluded that appellant on his counterclaim was entitled to a judgment.

The clerk of the Bell circuit court in preparing this record wholly failed to observe the provisions of subsection 6 of section V. of the rules of this court in that the exhibits filed with the depositions—and they were legion—were not indexed at all. Much valuable time was lost searching through this large record for the exhibits necessarily considered in the determination of this case and in the preparation of the opinion herein. The consideration of this case and the time lost by reason of the failure to observe the rule above again emphasizes the importance of the rule for the court. For the flagrant violation of the rule in this case the clerk will be penalized by having $50.00 deducted from his fees for copying the record.

Therefore, the judgment herein is reversed and this cause remanded with direction that judgment be entered in conformity with this opinion.