### Taylor & Crate v. Asher.

(Decided March 16, 1928.)

### Appeal from Bell Circuit Court.

1. Execution.—Description of land in sheriff's deed on execution is not binding in determining the quantity of land conveyed, and deed passes title to no more land than was levied upon.

2. Execution.—Description of land in execution levy as that conveyed by designated persons to defendant by deed of record in county clerk's office in specified book at specified page held sufficient, since description sufficient for conveyance is sufficient in execution levy.

3. Execution.—Description of land which is sufficient in conveyance of real estate is sufficient in levy of execution.

4. Deeds.—Description of land in conveyance by reference made to book and page of record of deed under which grantor obtained his title is sufficient.

5. Deeds.—Where deed refers to recorded deed under which grantor holds title, such recorded deed may be referred to and read in connection with other deed to identify property granted.

6. Deeds.—Deed conveying to grantee all land in certain described boundary "held" under certain patent attempted to convey only such land as grantor owned within described boundary; "held" being used synonmously with "owned."

7. Execution.—Sheriff's deed under execution levy describing land as that conveyed by designated persons to defendant by deed of record in county clerk's office in specified book at specified page

held to convey only one of adjoining tracts of land belonging to defendant, in view of fact that sale of this tract was sufficient to satisfy execution and that other tract was mortgaged for more than it was worth.

3. Costs.—Failure of clerk of circuit court to index exhibits in transcript on appeal as required by Court of Appeals rule 3, sec. 10, held to warrant Court of Appeals in reducing bill of clerk $20 in taxing costs.

LOW & BRYANT and BOSLEY & MOREY for appellant.

CLEON K. CALVERT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

In January, 1904, A. J. Asher began this action against Taylor & Crate, the Jones Lumber Company, and Louis F. Bird, alleging that he was the owner and in possession of a tract of land, which he described; that the defendants were trespassing thereon and removing logs therefrom, wherefore he prayed that they be enjoined from further interfering with him in the enjoyment of the said property, and prayed a judgment for $250 damages and for other proper and equitable relief. The two corporations, Taylor & Crate and the Jones Lumber Company, in the first paragraph of their answer, categorically denied the petition. In the second paragraph they affirmatively alleged ownership of two tracts of land which they described, only one of which concerns us, and that is a tract of 106.43 acres which is a part of 160 acres known as the Renfro land, which is described in a deed now of record in Bell county in Deed Book 35, p. 309, executed by Preston Hendrickson and wife. Asher was successful, and Taylor & Crate have appealed.

On August 25, 1851, there was patented to James Farmer a tract of 7,000 acres of which the land in controversy is a part. On January 15, 1875, James Farmer conveyed to C. G. Renfro by deed of record in Deed Book 1, p. 495, Bell county court, a tract of land supposed to contain 160 acres, of which the 106.43 acres in controversy here is a part, and by four mesne conveyances this property came into the ownership of Preston Hendrickson on March 16, 1889, by deed in Book 8, p. 312. In March, 1883, James Farmer (apparently oblivious of the fact that he had eight years before made this conveyance to Renfro) executed a conveyance with clause of special warranty to his son John Farmer, by which he conveyed

him this 7,000-acre patent and used the identical description that was used in the patent. About two weeks after that, John Farmer (also oblivious of the deed to Renfro) by deed of special warranty conveyed to James G. Howard et al.—

> "*All land by him owned in the following described boundary of land containing two hundred acres more or less of a 7,000 acre survey patented unto Capt. James Farmer lying and being in the county of Bell on the right hand fork of Burns' Mill creek the same fork that Levi Hoskins made an improvement upon and bounded as follows*: Beginning on the line of the survey above mentioned at the terminus of the ridge between the Buckeye and right hand forks of said creek thence up said ridge running with the top of the same to the head of said right hand fork, thence with the top of the ridge east of said right hand fork to the line of said survey, thence with the line of said survey to the beginning together with all and singular the appurtenances and improvements thereunto belonging."

According to recent surveys this boundary would have contained 551 acres. Much of it was covered by senior patents, and a part of it had theretofore been conveyed to Renfro. Farmer seemed to realize this and estimated *all land owned by him* in the boundary at 200 acres, but by subsequent surveys it has been ascertained that the actual quantity he then owned and hence conveyed Howard was 167 acres. Five years thereafter, in 1888, James G. Howard and wife by a special warranty deed now of record in Deed Book 7, p. 592, Bell county court, undertook to "*convey unto Preston Hendrickson all land in the following described boundary held under a 7,000-acre patent granted unto James Farmer* (here follows a description identical with the description in the deed from Farmer to Howard) *containing 200 acres more or less.*" Thus Hendrickson had by the latter part of March, 1889, become the owner of two tracts of land which adjoined each other. One was a tract supposed to contain 200 acres, but which actually contained 167 acres, which he had acquired from James G. Howard by deed in Book 7, p. 592, and the other was a tract supposed to contain 160 acres, of which the 106.43 acres is a part, which he had acquired from C. G. Renfro by deed in Book 8, p. 312. Hendrickson had been sued and judgments had been

recovered against him, and in order to induce parties to become sureties upon his replevin bonds he had mortgaged to M. J. Moss et al. this Renfro tract of land. On June 7, 1891, an execution against Hendrickson and M. J. Moss was issued on one of these replevin bonds, and we find this indorsed on that execution:

"Levied the within execution in favor of the Turner Looker Co. and against P. Hendrickson and M. J. Moss on a certain tract of land lying on Burns' Mill creek waters of Straight creek Bell county, Kentucky and conveyed by J. G. Howard and wife to the defendant Hendrickson by deed of record in the Bell county clerk's office in deed book 7, page 592 as the property of the defendant Hendrickson. This July 2nd, 1891."

The next indorsement is a credit for $212 paid August 21, 1891. Then follows this indorsement:

"Satisfied said execution by selling said tract of land on the 14th day of September, 1891, being the first day of the Bell county court at the courthouse door in Pineville, Bell county, at public outcry to the plaintiff the Turner Looker Company who was the highest bidder. . . . For a more particular description of said land, see the above mentioned deed which is hereby referred to and made a part of this return."

This land did not bring two-thirds of its appraised value, so the record states; but we have not the appraisement before us. On May 25, 1903, the sheriff made a deed to the Turner Looker Company, the purchaser at that sale, in which he refers to the execution, and says that he *"levied the same on a certain tract of land in Bell county, Kentucky being the land conveyed by J. G. Howard and wife to defendant Hendrickson by deed in deed book 7, page 592."* The sheriff then recites the sale and conveys to "The Turner Looker Company, a corporation of Cincinnati, the lands so sold as aforesaid, and bounded and described as follows, to wit, *containing 200 acres more or less of a 7,000-acre survey patented unto James Farmer* (here follows description identical with description in deed from John Farmer to James G. Howard et al.) *and being same land conveyed by J. G. Howard and wife to the defendant by deed of record in the Bell county clerk's office in deed book 7, page 592."* Four months thereafter the Turner Looker Company

conveyed to A. J. Asher *"all the land in the following described boundaries held under the 7,000-acre patent* (here follows the same description as in John Farmer to James G. Howard et al.) *being all the land to which the first party derived title by sheriff deed."*  Before this was recorded, Asher had begun this suit.

The property affected by this litigation is this tract of 106.43 acres, a part of the 160-acre tract, known as the Renfro land, which at the time of the issue and levy of this execution belonged to Preston Hendrickson, and which has since by mesne conveyances come into the ownership of Taylor & Crate.  From the record before us it would appear that Taylor & Crate have got title to this 106.43 acres unless it was included in the land levied on and sold by the sheriff under the Turner Looker Company execution, and has since been acquired by A. J. Asher from the purchaser at the execution sale.  We must determine just how much of Hendrickson's land passed under this sheriff's deed to the Turner Looker Company, and in determining this we are not bound by the descriptions given in the sheriff's deed.  "The deed passes title to no greater quantity of land than the levy." Martin v. Martin, 11 Ky. Opin. 195.  The levy describes the land levied on as that acquired of Howard under deed in Book 7, page 592.  That was sufficient description.  See 23 C. J. p. 456.  A description that would be sufficient in a conveyance of real estate is sufficient in the levy of an execution, and it has often been written that land was sufficiently described in a conveyance where reference is made to the book and page of the recorded deed from which the grantor derived his title.  See 8 R. C. L. 1078; 18 C. J. 281.  When a deed refers to the recorded deed under which grantor holds title, the latter deed may be referred to and read in connection with it to identify the property granted.  See Steele v. Bryant, 132 Ky. 569, 116 S. W. 755.

This brings us back to the deed from Howard to Hendrickson, and when we examine it we find that Howard undertakes to convey unto Hendrickson all land in a certain boundary "held under a 7,000-acre patent granted unto James Farmer . . . containing 200 acres more or less."  The particular description which Howard used in that deed would have inclosed a tract that we now know would contain 551 acres, yet Howard does not undertake to convey 551 acres, but on the contrary, says he is conveying 200 acres more or less.  This clearly shows

that he knew that there was certain land in this boundary that he did not own. He probably knew there were senior patents that overlapped this boundary, and that this Renfro tract occupied a portion of this boundary, and used the word "held" here synonymously with the word "owned." In other words, Howard was undertaking to convey what land he owned in that boundary, just as his immediate grantor, John Farmer, in turn had conveyed Howard what land he (Farmer) owned in that boundary. Certainly neither of them could convey any land they did not own, and both of them estimated their ownership to cover about 200 acres, and that was all they undertook to convey. That was all the sheriff undertook to levy on. It was all he sold and all that Asher, who is holding under that execution sale, has title to. Howard never did own this Renfro land, so far as this record discloses; neither did John Farmer, his grantor, and Hendrickson never claimed to have acquired this Renfro tract from them, but had acquired it by deed direct from Renfro.

We have examined the deed by which Renfro conveyed this land to Hendrickson. He conveyed it by general warranty and described the 160 acres. He makes no mention of any claim that Hendrickson has to any part of it under deed from Howard, but does mention that a portion of it is covered by deed made to Hendrickson by John M. Conant, and he mentions that another portion is covered by certain claims of Jesse Johnson, and he excepts from the conveyance land covered by these claims. It is true that at the time this execution was placed in the hands of the sheriff, Hendrickson had title to both this Howard tract and the Renfro tract; but the sheriff would have had no authority to levy on any more land than was necessary to satisfy this execution, and the record discloses that the sale of the Howard tract was sufficient to satisfy the execution; therefore it follows that the sheriff would have had no right to levy on the Renfro tract. Moreover, there was at that time a mortgage on this Renfro tract, and unless this mortgaged land was much more valuable than the Howard land, judging from what the Howard land brought at the sale, to wit, less than $3 an acre, then this Renfro tract was mortgaged for more than it was worth. Thus we see there were two good reasons for not levying this execution on the Renfro tract; First, there was probably nothing to be gained by so doing, as the mortgage then on the Renfro tract was per-

haps more than it was worth; and, second, because the sheriff had no right to levy on any more of Hendrickson's land than was necessary to satisfy the execution, and as we have stated, the Howard tract did satisfy the execution. Therefore the sheriff had neither right nor reason to levy on the Renfro tract, and the record does show that he did not do so, and hence Asher, who is claiming under this execution sale, has no claim against this Renfro land. In saying this, we are fully aware that a then member of this court, upon an application to him in this case made nearly 25 years ago, reached a different conclusion and dissolved an injunction, but he had before him then about 100 pages of record, nearly half of which was affidavits. The facts had not been fully developed; whereas, we have nearly 700 pages of record. The parties have spent nearly a quarter of a century in taking proof, digging up records, and presenting the facts. The action of the trial court in adjudging to Asher the ownership of any portion of this Renfro land was erroneous. Having reached this conclusion, we can see no good reason for discussing other questions presented.

The clerk's bill for making this transcript is $203. We have in section 10 of rule 3, in setting out how the index of a record shall be made, provided: *"Each exhibit shall be indicated in the index by some brief description sufficient to show what the paper is."* For example, *Exhibit 6, deed James Farmer to C. G. Renfro, page 447; yet in this* transcript there are 48 exhibits many of which are not indexed at all, and none of them are in any way described in the index, but are merely numbered. There are two different exhibits indexed as "Exhibit 1" and the same is true of Exhibits 2, 3 and 4. We dislike to reduce a clerk's charge for making a transcript, but after we have for years tried to get the clerks to observe our rules, we know of no other method. Before we could intelligently examine this record we had to properly index these exhibits. The clerk should have done that, and because he failed so to do, the clerk of this court in taxing the cost will reduce the bill rendered by the clerk of the Bell circuit court $20, and if the latter has already been paid for making this transcript, he shall refund that sum. See Howard v. Watkins, 211 Ky. 75-86, 276 S. W. 1075-1079. The lawyers of the state are requested to call the attention of the circuit clerks to this rule.

The judgment is reversed, with directions to set it aside and to dismiss the plaintiff's petition.