## Commonwealth for Use of Lynch et al. v. Campbell et al.

(Decided November 1, 1929.)

FÁULKNER & FAULKNER and JOHN JENNINGS, Jr., for appellants.

WOOTTON & WOOTON for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Plaintiffs in the trial court have appealed from a judgment dismissing their petition.

On June 22, 1924, Chas. L. Lynch, a resident of Perry county, Ky., was shot and killed by John Vermillion. Lynch died intestate, and without issue. His father and mother were dead, and the distributees of his estate were his widow, now Mattie Lynch Campbell, and his five brothers and five sisters.

His estate consisted of a farm in Tennessee (owned jointly by Chas. L. Lynch and his wife, now Mrs. Campbell), and the following personal property:

| | |
|---|---:|
| Life insurance payable to the estate of Chas. L. Lynch | $5,000.00 |
| Money in bank to credit of Chas. L. Lynch | 412.22 |
| Salary due Chas. L. Lynch | 122.00 |
| Note due Chas. L. Lynch | 2,000.00 |
| Household goods and effects | 150.00 |
| Total | $7,684.22 |

Eight days after death of Chas L. Lynch, his widow, who is now his administratrix, wrote a letter to Andy Lynch and family, in which she said: "We haven't any ready cash. Don't know when I will get the insurance, whether ever or not."

In that letter she urged Andy Lynch to induce the other members of the family to sign the papers her lawyer was sending them. On that same day her attorney wrote a long letter to each of these five brothers and five sisters, the substance of which is: That C. L. Lynch had been recently murdered; that she was anxious to raise funds to prosecute his slayer; that, in order to do so, she must raise money therefor by mortgaging the land in Tennessee; that this land was owned jointly by her and her husband, and that these appellants would inherit each a one-tenth undivided interest of C. L. Lynch's half thereof; that she could not mortgage the land without having the whole title; that no one would loan her money thereon, unless she had the whole title, although she did have a dower interest in their half of it; that C. L. Lynch left no personal property except his household goods and personal effects; that he held an insurance policy, but that insurance policy *was payable to her, Mattie Lynch,* and she was unable to realize on it in time to prosecute the slayers of her husband.

Therefore she asked that these appellants convey to her, free of charge, as she hoped, the Tennessee lands to enable her to raise money to prosecute the people who had killed her husband and their brother.

She left the consideration blank in the hope that they would not charge her anything for it, and asked them to put $1 in as the consideration.

Finally, if they were not willing to do that, to write her what nominal sum they would take to make the con-

veyance, and it would be paid through the Hazard Bank & Trust Company. Finally, the suggestion was made that their interest in the land was not worth much anyway, considering her widow's interest therein; but in this connection suggested that, if they were not willing to convey it, she would reconvey it to them as soon as she paid off the mortgage thereon.

A portion of this letter we think best to copy here. It is:

*"She informs me that Mr. Lynch left no personal property other than his household goods, and personal effects. He held a life insurance policy which Mrs. Lynch informs me, is payable to her. She can't collect this policy in time to use the money in the prosecution of Mr. Lynch's slayer."*

These papers not being signed and returned as promptly as she desired them, she made a trip to Tennessee on July 19, 1924, and, according to the evidence for the plaintiffs, she told them the same things contained in the letter written by her attorneys, and on that trip, by paying them $50 each, she induced them to sign these deeds.

In each of these deeds there is written this in the same sentence with the warranty of title: "And said parties also hereby convey their interest in the personal estate of C. L. Lynch."

Things went on until July 20, 1926, when these brothers and sisters filed their petition in equity against Mrs. Campbell as administratrix and the sureties on her bond attacking these deeds so far as the personal property is concerned. As a basis of their attack, they allege, fraud, mistake, etc. Issue was joined, and the proof heard, with the result noted.

Mrs. Campbell testified that her husband while on the way to the hospital told her she would get the insurance, but he did not know about the note. She says she never said anything to any of the plaintiffs about the $2,000 note, and, while she admits telling them the insurance was payable to her, she says she at that time honestly believed it was. The testimony for the plaintiffs is to the contrary. It not only is that she said the insurance was payable to her, but that she represented the note as practically worthless, and that she had been unable to get 25 cents on the dollar for it. Mrs. Campbell's tergiversant description of this estate was calcu-

lated to decieve, and, according to their evidence, it did deceive the plaintiffs, and she should not want to keep, and the law takes from her, the gains she got thereby.

Even if she did believe the insurance was hers and the $2,000 note was worthless when she secured these deeds, she then had opportunity to learn the truth, and these statements were rather recklessly made, but, if she had endeavored then to learn the truth, and if, when she gave this false information to her husband's brothers and sisters, she believed it to be true, and they acted on it, still she has since learned it was false, and, after so learning, she did not correct the impression she made upon their minds when she got these deeds.

"The unqualified assertion of what one does not know to be true is equivalent to and as unjustifiable as the assertion of a known falsehood." 26 C. J. 1110.

In Foard et al. v. McComb, 75 Ky. (12 Bush) 723, this is quoted with approval from Story's Equity:

"Whether the party thus representing a material fact knew it to be false or made the assertion without knowing whether it were true or false is wholly immaterial, for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false; and even if the party innocently misrepresents a material fact by mistake it is equally conclusive, for it operates as a surprise and imposition upon the other party."

See, also, Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293.

When a party seeks rescission of a contract for fraud practiced in its obtention, the question is, did he act upon the information given? Was it given for that purpose? And was it false? If all these questions are answered "Yes," then he is entitled to relief, no matter how firmly the party giving the information may have believed it to be true. Metropolitan L. Ins. Co. v. Schmidt, 93 S. W. 1055, 29 Ky. Law Rep. 255; Modern Woodmen of A. v. Shields, 202 Ky. 795, 261 S. W. 594; Commonwealth Life Ins. Co. v. Goodknight, 212 Ky. 763, 280 S. W. 123; Provident Sav. Life Assur. Co. v.

Whayne's Adm'r, 131 Ky. 84, 93 S. W. 1049, 29 Ky. Law Rep. 160.

In Black on Rescission and Cancellation, vol. 1 p. 316, sec. 106, we find this:

"It would be contrary to all the principles of equity to permit a party to retain the advantages gained by a bargain into which the other party would not have entered at all if he had not been deceived or misled. From this point of view, it is entirely immaterial whether the deception was brought about intentionally or was the result of mistake or accident. The possession of an inequitable advantage gained by deception, is the point which chancery regards."

The plaintiffs were entitled to the relief they sought, and the court erred in dismissing their petition.

The settlement attempted to be made is very irregular. The court will set it aside, refer this cause to a commissioner, with directions to allow Mrs. Campbell credit for the $750 that is hers under section 1403, subd. 5, of our statutes to allow her credit upon the $6,934.22 remaining, for all duly verified claims against this estate paid by her, for the funeral expenses and a reasonable monument for the deceased, for her reasonable expenses in settling this estate, including a reasonable fee to her counsel, a reasonable compensation for her services, and, if she has not then paid to plaintiffs their moiety of the sum then remaining, the court will award them judgment for that sum against Mrs. Campbell and her sureties.

In making up this record, the clerk of the circuit court has given scant attention to the requirements of section 737, subd. 12, of the Civil Code of Practice and section 10 of rule 3 of this court, relative to indexing the record, and has referred to the exhibits as "Exhibits filed with answer," "Exhibits filed with deposition," etc., without saying what the exhibits were. We have often pointed out how this should be done, and imposed penalties for not so doing. Anderson v. S. V. & E. R. Co., 171 Ky. 740, 188 S. W. 772; Taylor & Crate v. Asher, 223 Ky. 574, 4 S. W. (2d) 385; Howard v. Watkins, 211 Ky. 75, 276 S W. 1075; Strader v. Strader, 160 Ky. 442, 169 S. W. 857; Chesapeake & O. Ry. Co. v. Shaw, 168 Ky. 537, 182 S. W. 653; Taylor Coal Co. v. Miller, 168 Ky.

719, 182 S. W. 920; and Combs v. Combs, 185 Ky. 215, 214 S. W. 894; Lemon v. Com., 171 Ky. 822, 188 S. W. 858; Searcy v. Golden, 172 Ky. 42, 188 S. W. 1098.

In this case the clerk shall have $10 deducted from the fee otherwise due him.

Judgment reversed.