EDWIN A. Boss, Appellant, v. POLK COUNTY et al., Appellees.

No. 46677.

JUNE 19, 1945.

Stipp, Perry, Bannister, Carpenter & Ahlers, of Des Moines, for appellant.

F. T. Van Liew, Howard Hall, and Herrick, Sloan & Langdon, all of Des Moines, for appellees.

WENNERSTRUM, J.— The main issue involved in this appeal is whether property taken by the United States Government for use during the war emergency of World War II is exempt from taxation under the provisions of the Code of Iowa, as well as by virtue of one of the provisions of the Constitution of the United States. The plaintiff sought to enjoin the county officials of Polk County, Iowa, from collecting taxes for the year 1943, due in 1944, on the property involved in this litigation. The trial court held that the property, the record title of which during the year 1943 remained in the plaintiff, was not exempt from taxation. Plaintiff has appealed.

Edwin A. Boss, the appellant, acquired ownership in 1941 of the Chamberlain Hotel in Des Moines, Iowa, the taxation of which has resulted in this litigation. By virtue of congres-

sional authority, 50 U. S. C., War, Appendix, section 632, the Attorney General of the United States, on August 13, 1942, commenced a proceeding for condemnation of the hotel property for the use of the government. On this same date an order was entered by the Honorable Charles A. Dewey, Judge of the United States District Court for the Southern District of Iowa, wherein it was provided:

" * * * that the immediate possession and use of the following described lands [including the Chamberlain hotel property] * * * is hereby granted to the United States of America on August 15, 1942, at 12 noon."

On August 15, 1942, the United States Government, pursuant to the order of the United States District Court, took possession of the hotel property. The government retained the possession of this property until June 15, 1944. During the time that the government was in possession of the hotel it was used for the housing of the Women's Army Auxiliary Corps, one of the branches of the military services of the United States. The property involved in this appeal is located on the northeast corner of Seventh and Locust Streets in Des Moines. Subsequent to the order of possession the government determined that it had no use for the eight ground-floor store rooms located on Locust and Seventh Streets. On April 1, 1943, by virtue of a stipulation and an order of the United States District Court relative to the matter, the appellant received back from the government all rentals which had been collected by it from the tenants of the store rooms covered by the stipulation between August 15, 1942, and April 1, 1943. The appellant does not claim exemption from taxation of that portion of the property represented by the rooms which had been rented for retail purposes during the year 1943. It is the appellant's contention, however, that an apportionment should be made between the exempt and nonexempt portions of the property. Testimony was presented on behalf of the appellant that twenty-five per cent of the claimed tax should be levied against that portion of the building used for retail store purposes and that the remaining seventy-five per cent of the claimed levy should not be collected.

The record shows that no appraisers were named in this condemnation proceedings and no formal order of appraisement was ever entered. During the time that the government was in possession of the property negotiations were had between the appellant and it seeking a settlement of the amount of an award for compensation due the appellant for the taking of the property. A final settlement was agreed upon on July 26, 1944, which was subsequent to the date the government gave up possession of the hotel property. It is shown that on March 26, 1943, the government deposited in the registry of the district court the sum of $24,726.50, which was paid in to apply on account of just compensation for the taking of the use of the Chamberlain Hotel property for the period commencing August 15, 1942, and ending June 30, 1943. On March 26, 1943, the government petitioned the court for authority to distribute and pay the amount deposited to the parties entitled to it on the basis of not to exceed $2,354.90 for each completed month the government had occupied and used the hotel, and that said amount should be credited against any ultimate award which should be finally determined and adjudicated as just compensation due the owners of the property for the taking of the use of the real property and certain personal property. On March 29, 1943, a further stipulation was entered into wherein it was agreed that the deposited amount should be distributed to the appellant herein and a prior lessee of the hotel. This stipulation was confirmed by an order entered in the condemnation proceeding in the district court on this same date wherein it was provided and authorized that the appellant should receive a certain amount each month upon the filing of a receipt stating "that said payment is made on account of rental accruing for the month in which payment is made" and which receipt should also provide that "said payment is received as credit on the amount of just compensation when so finally and judicially determined." On July 26, 1944, a stipulation was entered into between the appellant and the government wherein the government agreed to pay into the registry of the court an additional sum of $25,190, and by which stipulation it was agreed "that upon approval of the stipulation by the Court judgment be

entered against the United States of America in favor of Edwin A. Boss in the sum of $25,190.00 without interest, which when paid, together with the sums heretofore paid, shall constitute full, final and complete settlement for the taking of and use of the property.'' On this same date the court entered an order confirming the stipulation and determined the stipulated payment as just compensation.

I.  Section 4, 1939 Code of Iowa, as amended by chapters 41 and 210 of the Acts of the Fiftieth General Assembly, provides as follows:

''The United States of America may acquire by condemnation or otherwise for any of its uses or purposes any real estate in this state, and may exercise jurisdiction thereover but not to the extent of limiting the provisions of the laws of this state. * * *

''Such real estate shall be exempt from all taxation, including special assessments, while held by the United States except when taxation of such property is authorized by the United States.''

It is the claim of the appellant that by virtue of the last-quoted statute the property in question was exempt from taxation while used by the government. It is the appellant's contention that ownership was not necessary to obtain the exemption and that when the United States of America acquired ''by condemnation or otherwise for any of its uses or purposes any real estate in this state * * * Such real estate shall be exempt from all taxation * * *.''

Counsel for the appellant and appellees have presented elaborate briefs on the question involved, and the appellant particularly claims that by virtue of the historical development of section 4 of the Iowa Code the necessity for the requirements of ownership has been dropped by the legislature. However, it is our conclusion that we can dispose of this contention by our interpretation of the words ''acquire'' and ''held.''

In the case of Commissioner of Insurance v. Broad Street Mut. Cas. Ins. Co., 312 Mass. 261, 263, 44 N. E. 2d 683, 684, 143 A. L. R. 982, the question considered was the liability of the receiver of an insurance company for unemployment compen-

sation due under the laws of the state of Massachusetts. In that case the court considered whether the receiver was within the provisions of the unemployment-compensation act of the state of Massachusetts because he had " 'acquired the organization, trade or business, or substantially all the assets thereof, of another employer [the company] who at the time of such acquisition was an employer subject to this chapter * * *.' " In the opinion in this case it is stated:

"The word 'acquire' imports ownership, and is not satisfied by the mere custody or control that a receiver has. Helvering v. San Joaquin Fruit & Investment Co. 297 U. S. 496, 499 [56 S. Ct. 569, 80 L. Ed. 824]. Wulzen v. Board of Supervisors, 101 Cal. 15, 25 [35 P. 353, 40 Am. St. Rep. 17]. In re Okahara, 191 Cal. 353, 362 [216 P. 614]. Clarno v. Gamble-Robinson Co. 190 Minn. 256, 259 [251 N. W. 268]. National Surety Co. v. McGreevy, 64 Fed. (2d) 899, 901. Webster's New International Dictionary defines the word 'acquire' as 'to get as one's own.' The Oxford New English Dictionary defines it as 'To gain, obtain, or get as one's own, to gain the ownership of.' "

In the case of Crutchfield v. Johnson & Latimer, 243· Ala. 73, 75, 8 So. 2d 412, 414, the following statement is found:

"To 'acquire' is, in the law of contracts, to become the owner of property; to make property one's own. Wulzen v. Board of Sup'rs of City and County of San Francisco, 101 Cal. 15, 35 P. 353; 356, 40 Am. St. Rep. 17; Ex parte Okahara, 191 Cal. 353, 216 P. 614, 618."

In the case of National Surety Co. v. McGreevy, 8 Cir., Mo., 64 F. 2d 899, 901 [certiorari denied 290 U. S. 644, 54 S. Ct. 62, 78 L. Ed. 559], it is stated, in construing the word "acquired," used in a bond contract, as follows:

"The word 'acquired,' as used in this contract, means to become the owner of. The New Century Dictionary defines the word as follows: 'To get as one's own.' In Webster's New International Dictionary the word is defined as: 'To gain by any means; usually by one's own exertions; to get as one's own; as to acquire a title, riches, knowledge, good or bad habits.' In

Bouv. Law Dict. (Rawle's Third Revision) vol. 1, p. 114, the word is defined as follows: 'To make property one's own. To gain permanently. It is regularly applied to a permanent acquisition. A man is said to obtain or procure a mere temporary acquisition.' See, also, Federal Trade Commission v. Thatcher Mfg. Co. (C. C. A. 3) 5 F. (2d) 615; In re Okahara, 191 Cal. 353, 216 P. 614; Wulzen v. Board of Supervisors, 101 Cal. 15, 35 P. 353, 40 Am. St. Rep. 17; Hartigan v. Los Angeles, 170 Cal. 313, 149 P. 590; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 165; Creamer v. Briscoe (Tex Civ. App.) 107 S. W. 635.''

In the case of Helvering v. San Joaquin Fruit & Investment Co., 297 U. S. 496, 499, 56 S. Ct. 569, 570, 80 L. Ed. 824, it is also stated:

"The word 'acquired' is not a term of art in the law of property but one in common use. The plain import of the word is 'obtained as one's own.' Language used in tax statutes should be read in the ordinary and natural sense.''

In several jurisdictions courts have judicially defined the word "held." In the case of Federal National Bank v. Miller, 128 Okla. 82, 85, 261 P. 206, 208, the Oklahoma court gave consideration to a statute exempting banking corporations which paid taxes on their capital stock, surplus, and undivided profits from registering certain choses in action and paying taxes on them. In commenting upon the word "held," as used in the Oklahoma statute, it is there stated:

"It is our judgment that the word 'held' is to be construed as meaning absolute ownership in the bank which holds possession of the character of choses in action as mentioned in section 9608, supra. * * *

"We cannot readily see how the true owner of the bonds, notes, etc., by merely transferring possession of the same to a banking corporation may seek to escape the provision of section 9608, supra; however, but little annoyance should be expected from this practice, for the reason that the word 'held' must be construed to mean absolute ownership by the bank having possession of this character of property, as any less degree of

interest held by the bank would render such paper taxable as provided by section 9608, supra.''

In the case of Wey v. Salt Lake City, 35 Utah 504, 508, 101 P. 381, 382, the Utah court gave consideration to the claimed exemption from special assessment of property owned by the board of education of Salt Lake City, and there stated:

''The statute exempting property of the board has exempted 'all property, real or personal, held by the board of education.' The word 'held,' as used in the statute, means owned. (State v. South Penn. Oil Co., 42 W. Va. 80, 24 S. E. 688.) ''

In the case of In re Estate of Williams, 40 Nev. 241, 258, 161 P. 741, 746, L. R. A. 1917C, 602, it is stated:

''The word 'held' has been construed to mean ownership (Wey v. Salt Lake City, 35 Utah, 504, 101 Pac. 381; Higgins v. Downs, 91 N. Y. Supp. 937), and we find no good reason for holding that the word 'held,' as here used, was not intended to convey the idea of a peculiar yet distinct ownership.''

Section 4 of the 1939 Code of Iowa, amended by chapters 41 and 210 of the Acts of the Fiftieth General Assembly, which has heretofore been quoted, states that the United States of America may acquire real estate and that such real estate shall be exempt from taxation while held by it. From our study of the several cases heretofore quoted it is apparent to us that the words ''acquire'' and ''held'' both imply and contemplate ownership. See, also, Taylor & Crate v. Asher, 223 Ky. 574, 4 S. W. 2d 385, 387. We are unable to reach any other conclusion and consequently hold that the statute under which the appellant claims exemption does not contemplate an exemption where the ownership of the property does not actually pass to the government.

II. The appellant contends that, in addition to the exemption claimed under section 4 of the 1939 Code, as amended, the property involved in this litigation cannot be taxed because it was employed by the United States of America throughout the year 1943 for the sole purpose of carrying out the govern-

ment's constitutional power to wage war. It is further contended that this property is exempt from all state interference by taxation under the provisions of Article VI, Clause 2, of the Federal Constitution, commonly known as the Supremacy Clause.

It is the claim of the appellant that the early case of McCulloch v. State of Maryland, 1819, 4 Wheat. (U.S.) 316, 436, 4 L. Ed. 579, wherein Chief Justice Marshall held that a state government does not have the power, by taxation or otherwise, "to retard, impede, burden, or in any way control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government," is authority for this court to hold, under the facts in the present case, that the tax cannot be collected. The later case of Van Brocklin v. State of Tennessee, 1886, 117 U. S. 151, 6 S. Ct. 670, 29 L. Ed. 845, is a further claimed authority for denying the right of taxation such as is sought to be assessed in this case. In this last-cited case taxes were sought to be collected on real estate while owned by the United States Government. Naturally, the supreme court held the levying of such taxes was unlawful.

We do not deem it necessary to analyze these last two referred-to cases in detail. It will be sufficient if we give consideration to the discussion of the case of McCulloch v. Maryland, as found in later decisions of the United States Supreme Court. In the case of Thomson v. Union Pacific R. Co., 9 Wall. (U. S.) 579, 590, 19 L. Ed. 792, it is stated:

"But we are not aware of any case in which the real estate, or other property of a corporation not organized under an act of Congress, has been held to be exempt, in the absence of express legislation to that effect, to just contribution, in common with other property, to the general expenditure for the common benefit, because of the employment of the corporation in the service of the government.

"It is true that some of the reasoning in the case of McCulloch v. Maryland seems to favor the broader doctrine. But the decision itself is limited to the case of the bank, as a corporation created by a law of the United States, and responsible, in the use of its franchises, to the government of the United States.

"And even in respect to corporations organized under the legislation of Congress, we have already held, at this term, that the implied limitation upon State taxation, derived from the express permission to tax shares in the National banking associations, is to be so construed as not to embarrass the imposition or collection of State taxes to the extent of the permission fairly and liberally interpreted. [National Bank v. Commonwealth (ante, 353); Lionberger v. Rouse (ante, 468).]

"We do not think ourselves warranted, therefore, in extending the exemption established by the case of McCulloch v. Maryland beyond its terms. We cannot apply it to the case of a corporation deriving its existence from State law, exercising its franchise under State law, and holding its property within State jurisdiction and under State Protection.

"We do not doubt the propriety or the necessity, under the Constitution, of maintaining the supremacy of the General Government within its constitutional sphere. We fully recognize the soundness of the doctrine, that no State has a 'right to tax the means employed by the government of the Union for the execution of its powers.' But we think there is a clear distinction between the means employed by the government and the property of agents employed by the government. Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means."

In the later case of Union Pacific R. Co. v. Peniston, 18 Wall. (U. S.) 5, 34, 21 L. Ed. 587, it is stated:

"Nothing, we think, in the past decisions of this court is inconsistent with the opinions we now hold. McCulloch v. The State of Maryland and Osborn v. Bank of the United States [9 Wheat. 738] are much relied upon by the appellants, but an examination of what was decided in those cases will reveal that they are in full harmony with the doctrine that the property of an agent of the General government may be subjected to State taxation. In the former of those cases the tax held unconstitutional was laid upon the notes of the bank. The institution was prohibited from issuing notes at all except upon stamped paper furnished by the State, and to be paid for on delivery, the stamp upon each note being proportioned

to its denomination. The tax, therefore, was not upon any property of the bank, but upon one of its operations, in fact, upon its right to exist as created. It was a direct impediment in the way of a governmental operation performed through the bank as an agent. It was a very different thing, both in its nature and effect, from a tax on the property of the bank. No wonder, then, that it was held illegal. But even in that case the court carefully limited the effect of the decision. It does not extend, said the Chief Justice, to a tax paid by the real property of the bank, in common with the other real property of the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in the institution, in common with the other property of the same description throughout the State. But this is a tax on the operations of the bank, and is, consequently, a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional. Here is a clear distinction made between a tax upon the property of a government agent and a tax upon the operations of the agent acting for the government. * * *

"It is, therefore, manifest that exemption of Federal agencies from State taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax: that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers."

We are unable to conclude that the taxation of the hotel property in any way was a tax upon any part of the operation of the government.

In the case of Baltimore Shipbuilding and Dry Dock Co. v. City of Baltimore, 195 U. S. 375, 380, 25 S. Ct. 50, 49 L. Ed. 242, Justice Holmes succinctly commented on the respective powers of the state and federal governments where the

question arose as to the power of the state to tax land conveyed by the federal government but which land might under certain conditions revert to it. It is there stated:

"Under an act of Congress of June 19, 1878, 20 Stat. 167, it was conveyed to the plaintiff in error on March 26, 1879. By the terms of the deed, following the requirements of the act, the consideration of the conveyance and the condition upon which it was made was that the Dock Company should construct a dry dock upon the land as specified, which it did, and that it should 'accord to the United States the right to the use forever of the dry dock at any time for the prompt examination and repair of vessels belonging to the United States free from charge for docking and that if at any time the property hereby conveyed shall be diverted to any other use than that herein named or if the said dry dock shall be at any time unfit for use for a period of six months or more, the property hereby conveyed with all its privileges and appurtenances shall revert to and become the absolute property of the United States.' This condition is relied upon as still keeping the land outside the taxing power of the State.

"It is argued that the United States has such an interest in the land as to prevent the tax, and also that the land is an agency of the Government by the terms of the grant. It is noted that this tax originally was levied upon the land, not upon the Dock Company's interest, and although the language of the final judgment was 'the property concerned in the appeal in this case' that is supposed to mean the same thing. * * *

"It would be a very harsh doctrine that would deny the right of the States to tax lands because of a mere possibility that they might lapse to the United States. The contrary is the law. The condition cannot be extinguished by the State, but the fee is in the Dock Company, and that can be taxed and, if necessary, sold, subject to the condition. [Citing cases.]

"Finally, we are of opinion that the land is not exempt as an agency of the United States. The Dock Company disclaimed that position for itself as a corporation, but asserts it for the land. The position is answered technically, perhaps, by what we have said already. The United States has no present right to the land but merely a personal claim against

the corporation, reinforced by a condition. But, furthermore, it seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time. Thomson v. Union P. R. Co., 9 Wall. 579 [19 L. Ed. 792]; Railroad Company v. Peniston, 18 Wall. 5 [21 L. Ed. 787].''

We are conscious of the fact that, as stated in the case of Thomson v. Union Pacific R. Co., supra, ''no State has a 'right to tax the means employed by the government of the Union for the execution of its powers.' '' And, as further stated in this last-referred-to case, ''there is a clear distinction between the means employed by the government and the property of agents employed by the government.'' We are, however, unable to reach the conclusion that the hotel property was a ''means employed by the government of the Union for the execution of its powers.'' This property was, as disclosed by the record, only taken for use during the war emergency. The title at all times remained in the appellant. We are unable to conclude that by the taxing of this property the state government seeks ''to retard, impede, burden, or in any way control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'' The taxation here imposed in no way affects the powers vested in the general government. It may be suggested that no tax sale could be effectively made if the taxes on this property were not paid. Our answer to this possible situation is that a sale could be made even though subject to the right of the government to use the property for emergency war purposes. It should be kept in mind that the government did not take the title to the property. All it took was the use of it.

Our attention has been called to United States v. Allegheny County, 1944, 322 U. S. 174, 64 S. Ct. 908, 88 L. Ed. 1209. It is the claim that this late case gives support to the contention that the property should not be taxed. We do not believe this case is controlling in that it involved the question of the taxation

of personal property owned by the government and which was attached to privately owned property. It is our conclusion that this case is not similar to the situation that is presented in the instant case. We have also given consideration to the numerous other cases cited by the appellant, but we are confident that, under the facts in the case before us for review, they give little support to the contentions of the appellant.

We have consequently reached the conclusion that the taxation of this property in no way affects the governmental functions of the United States Government and that the imposition of taxes on this property is not in any way in contravention of the Federal Constitution.

It has been suggested by the appellant that the case of United States v. 9.94 Acres of Land in City of Charleston, D. C., S. C., 51 F. Supp. 478, 484, is authority for the condemnation of land by the government of an interest other than a fee simple interest. This right cannot be questioned. The authority for such action is given in 50 U. S. C., War, Appendix, section 632. It is of interest to note, however, that in this last-cited case, the United States District Court for the Eastern Division of South Carolina had this pertinent statement to make relative to taxes on the land condemned for apparent temporary use. It is there stated:

"Referring to the matter of taxes, under the law of South Carolina the owner of the fee is responsible for same. The government did not choose to take a complete fee simple title and, therefore, the fee remains as at present in the names of the defendant owners. The taxes will be assessed against them and will constitute a lien on their interests in the property. As to whether or not they will pay these taxes is a question for them to decide."

The situation presented in this last-cited case is somewhat similar to the facts involved in the case now before us for review. It is true that the tax question here presented was not involved in the South Carolina case, but the statement of that court, perhaps dictum, gives evidence of the attitude and reasoning of that court to the question we have before us for decision.

III. There are several other reasons for denying the exemption sought by the appellant.

In 51 Am. Jur. 509, 510, section 504, it is stated:

"The grant of an exemption from taxation rests upon the theory that such exemption will benefit the body of the people, and not upon any idea of lessening the burdens of the individual owners of property."

If the exemption is granted in this case the benefit will apply only to the appellant. That is not the theory upon which tax exemptions are granted. Further, it is the general rule of construction in Iowa that grants of immunity from taxation and tax-exemption statutes are to be strictly construed. Hale v. Iowa State Board of Assessment and Review, 223 Iowa 321, 271 N. W. 168, affirmed by United States Supreme Court, 302 U. S. 95, 58 S. Ct. 102, 82 L. Ed. 66; Samuelson v. Horn, 221 Iowa 208, 265 N. W. 168. It has also been stated that immunity from taxation by the state will not be recognized unless granted in terms too plain to be mistaken. Davenport National Bank v. Mittelbuscher, 8 Cir., Iowa, 15 F. 225; Morril v. Bentley, 150 Iowa 677, 130 N. W. 734. We do not believe that the statute under which the appellant claims exemption is so definite and explicit that we can say that the property in question is exempt from taxation. Neither can we so construe the statute as to give to it the meaning that the appellant now claims for it. If it is the desire of the legislature to exempt property under such a condition as is presented in this appeal we believe that it should so state the exemption in words that leave no question as to the intention of that body.

IV. The appellant makes the further contention that the portion of the hotel property used exclusively by the government should be exempted even though the court should conclude that the portion of the property used for store-room rental purposes should be taxed. Inasmuch as we have held that no portion of the property is exempt, we do not deem it necessary to discuss the question of partial exemption.

For the reasons heretofore stated we have concluded that the trial court was correct in its ruling and decree and that it should be affirmed.—Affirmed.

All JUSTICES concur.