## Louisville Soap Company v. Louisville Cotton Oil Company.

(Decided February 8, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 1)

1. Contracts—Merger—Previous negotiations, propositions and counter propositions, in the absence of fraud or mistake, will be conclusively presumed to be merged in a subsequently executed contract between the same parties and such previous propositions, etc., cannot, under such circumstances, be relied upon by either party in a litigation growing out of the subsequently executed contract.

2. Vendor and Purchaser—Boundaries—Deeds—Shortage in.—Where a vendee of land made a written proposition to the agent of the vendor for the purchase of same, and which proposition was accepted, and seven days thereafter a deed was executed for the land, in which was contained an accurate description by metes and bounds, but in the interim, the vendor learned that there was less land embraced in the boundary of the tract than was stated in the written and accepted proposition, and after learning this, the deed was accepted without protest, the vendee will not be entitled to recover of the vendor for the shortage, nor will he be entitled to a rebate of the purchase price, there being no fraud or mistake alleged in the execution of the deed.

3. Vendor and Purchaser—Sale in Gross—Abatement of Purchase Price.—Where land is purchased in gross and the description in the deed conveys all of the land in the boundary given in the deed, which boundary circumscribes all of the land agreed to be purchased, the vendee, especially in the absence of fraud or mistake, is not entitled to an abatement of the purchase price because of a deficiency in what he supposed the boundary to have contained.

HUMPHREY, MIDDLETON & HUMPHREY for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to January 13, 1913, the appellee was the owner of a parcel of land in the city of Louisville, upon which had been constructed many buildings and appurtenances, all of which were suitable for the use of the appellant in its business of manufacturing, and selling at wholesale, soap. The appellant desired to purchase this property and on the day mentioned it submitted in writing to the James H. Button Co., a real estate agent, who had the property listed for sale, a proposition to purchase same, which proposition, omitting heading and signature, is as follows:

"You are authorized to offer Eighty Thousand Dollars ($80,000.00) for the Louisville Cotton Oil Plant on Floyd and Southern Railroad, being the entire property owned by that company on the west side of Floyd Street, consisting of about six acres, more or less, together with all improvements thereon, including machinery, tools and appliances, motor trucks, wagons, office furniture and fixtures; in fact all of the property of said Louisville Cotton Oil Company, with the exception of tank cars and material and exclusive appliances for repairing same, materials and products on hand finished and unfinished; payable twenty-five thousand dollars ($25,000.00) cash upon delivery of deed, twenty-five thousand dollars ($25,000.00) in one year, thirty thousand dollars ($30,000.00) in two years, all with interest at six per cent payable semi-annually.

"You are to secure general warranty deed free of all incumbrances, and possession, on or before February 1, 1915. In the event we secure possession prior to February 1, 1915, we will assume all taxes for 1915.

"This offer for acceptance, and will not be recalled prior to January 14, 1915."

On the same day the appellee accepted this proposition by a writing thereon duly signed by it, which is in these words:

"The foregoing proposition was accepted by order of the Board of Directors at their meeting held the 13th day of January, 1915."

Between that time and the 20th of January, it was discovered by The Kentucky Title Co., who had been employed by appellant to investigate the title to the property, that it contained, not six acres, but only 3.527 acres. This information in regard to the contents of the

plot of ground was imparted to the appellant and it immediately notified the real estate agent to whom it had addressed the proposition to purchase.

Neither party seems to have paid any further attention to this discovery and on January 20th a deed was duly executed and delivered to the appellant by the appellee conveying all of its property and plant on Floyd Street and Southern Railway, being its entire property owned on the west side of Floyd Street. The description of the property in the deed is by metes and bounds and is very accurate, and there is no mention whatever in it as to the number of acres contained in the boundary of land conveyed.

At the time of the acceptance of this deed no objection was made by appellant of any shortage in the quantity of the land being conveyed, although it had learned some days before of the existence of the shortage. After it had acquired knowledge of the shortage, it paid the consideration for the purchase by the payment of the $25,000.00 cash at the time and executing its two notes, one for $25,000.00, and payable one year from date, and the other for $30,000.00, payable two years from date; all in exact accord with the accepted offer to purchase which it made on January 13.

On the 16th day of March following, a petition was filed in the Jefferson Circuit Court, Chancery Branch, Div. 1, by appellant, setting up the facts herein recited, including the acceptance of the deed with knowledge of the shortage, and alleging that the amount of the shortage was something near two and one-half acres, and charging that the reasonable market value of this shortage would be $7,419.00 and asking that it be given judgment against the appellee for this sum and that it be credited on the deferred payments. A demurrer was filed by appellee to this petition, which was sustained by the court, and the appellant declining to plead further, its petition was dismissed and it prosecutes this appeal.

It may be stated before considering the real merits of the case that it was alleged in the petition that appellant, on the faith of procuring this property, after the acceptance of its proposition to purchase, had made contracts for large quantities of supplies to be used by it in the manufacture of soap and that it needed the buildings upon this property in which to store the sup-

plies, and that this was at least to some extent an inducement for. it to accept the deed without protest.

We deem it necessary to devote but little of this opinion to the consideration of this contention. If the acceptance of this deed, under the circumstances shown, deprives the appellant of the relief which it seeks, its private reason for doing so could not change the rights of the parties in the eyes of the law, and more especially so for a reason of the character herein urged. Because of the present and pressing needs of the appellant to use the property for storage purposes, could not convert its unqualified acceptance of the deed into a qualified one, nor could such needs be given the effect to nullify the rule of law, whatever that is, as to the rights of the parties arising from the facts. The question then for determination is, not so much as to the rights of the parties when by either fraud or mistake there is discovered to be a large shortage in the amount of land intended to be conveyed, but, what are the rights of the parties to a sale of a specific piece of property, accurately described in the deed, and which description shows (or could have been ascertained by a slight calculation) that the shortage exists; and with full knowledge of this fact the deed is accepted by the vendee and the consideration paid as agreed in the original proposition to purchase, with no fraud being practiced, or mistake made by any one, and the deed accepted without any suggestions of dissatisfaction and without protest?

To our minds this question is easy of solution. It is a well-established principle of law that whensoever a contract is entered into and becomes binding upon the respective parties thereto, it merges into itself all preceding stipulations or propositions or counter-propositions which may have been considered by the parties to the contract; and this doctrine applies to the execution of deeds of conveyance of land with equally as much force as to other classes of contracts. Devlin on Deeds, 2 Ed., section 850; Elliott on Contracts, vol. 3, section 2264; Loftus v. Read, 31 L. R. A. (N. S.), 457, and notes thereto; Marshall's Heirs v. McConnell's Heirs, 1 Littell, 419; McGuire v. Pieratt, 7 Ky. L. R., 765; Craig v. Walker, 9 Ky. L. R., 903; Weller, et al. Trustees v. Fidelity Trust & Safety Vault Co., 23 Ky. L. R., 1136; Butt v. Riffe, 78 Ky., 356; Byrd v. Bank of Williamstown, 11 Ky. L. R., 868; Jones v. Prewitt, 128 Ky., 496;

Vicroy v. Vicroy, 20 Ky. L. R., 47; Fuson v. Chestnut, 33 Ky. L. R., 249; and other cases which might be cited.

In the case of Marshall's Heirs v. McConnell's Heirs, *supra,* the facts were that McConnell had executed a bond to convey a tract of land containing 500 acres to Marshall. Both of these parties died before the conveyance was made and the heirs of Marshall brought suit against the heirs of McConnell to compel the conveyance, which was subsequently done, and afterwards a controversy arose between the parties in which some of them sought to ignore the deed and to assert rights under the previously executed bond, which was denied to them by this court in the following language:

"The damages which might have been recovered in the suit brought for a breach of the condition of the bond, were satisfied by the deeds received by Marshall; the office of the bond had become extinct and no action could thereafter be maintained upon it."

In the McGuire case the opinion is not reported in full, but the abstract states the rule to be as follows:

"A vendee can not resist recovery on the purchase money notes upon the ground that the vendor sold and bound himself by title bond to convey a greater quantity of land than was afterwards found to be inside the boundary of the tract, he having surrendered the title bond and accepted a deed knowing of the deficiency."

In the Craig case, *supra,* damages were sought for trespass to land. Craig had purchased the land by title bond only from the heirs of one Maddox, who himself had purchased the land by title bond only from one Dawson. In order to obtain a deed, Craig filed suit against the heirs of Maddox for that purpose which resulted in the Master Commissioner executing to him a deed, but before it was made a survey of the land was ordered and a portion of it was not included in the deed, because it was found that although it had been in possession by Craig, it was not owned by Maddox. Craig accepted the deed with full knowledge that this part of the land had been excluded, although it was covered by the title bond under which he held it and it was upon this excluded land that the trespass had been committed for which he filed his suit. It will be seen that the land in controversy there was not included by the deed, but was covered by the title bond. He was not allowed to recover, and denying him such right this court said:

"He received the deed and held and claimed only the land conveyed by it for some time, with the knowledge of the fact that the survey and deed excluded the land in controversy.  *  *  *  The deed has remained all the time in full force with the appellant claiming under it. The deed merged the title bond, and the appellant's right of property is limited within the boundary of the deed, and that the fact that the appellant held the actual possession of the land within the boundary of the deed would not extend either an actual or constructive possession beyond the deed boundary."

In the case of Weller, et al. Trustees v. Fidelity Trust and Safety Vault Co., *supra,* the question was whether the purchaser when sued upon the purchase notes could be allowed a rebate because of the existence of an easement on the property at the time of the acceptance of the deed, which easement covered a strip of the lot in controversy 15 feet wide and for its entire length and constituted a part of one of the streets of the city. It appeared, however, that the existence of this easement was known by the purchaser at the time of the acceptance of the deed, and this court in denying a credit by reason thereof on the purchase money notes, said:

"The street was an open and notorious highway upon the land at the time of the purchase. The occupancy and use of the strip as part of the street is not a breach of the warranty. It was not only open and visible, but the vendees were acquainted with all the facts and knew that it was a public street of the city of Louisville.

"It is said in Butt v. Riffe, 78 Ky., 356: 'It is no eviction for which the grantor can be made liable when the land is taken for public use; and the purchaser, when a public highway is on the land at the date of his purchase, must be held to know of its existence, and to have made his bargain with a knowledge of the inconvenience resulting from it.'

"The same doctrine was enunciated in Bird v. Bank of Williamstown, &c., 11 Ky. L. R., 868."

In the case of Jones v. Prewitt, *supra,* an effort was made to force the vendee by an action for a specific performance to accept a conveyance of the land and to specifically perform the contract. This was resisted because of the existence across the land of a right of way for the construction of a railroad, of which the vendee had full knowledge at the time of entering into the

contract for the purchase of the land. This court dis-
allowed plaintiff any relief and refused specific perform-
ance upon grounds not pertinent to the question in this
case. Upon the point here being considered, this court,
however, said:

"If Jones, after entering into the contract, had, after
the land was surveyed and the quantity ascertained, ac-
cepted a deed in which he obligated himself to pay for
the whole number of acres, with knowledge of the in-
cumbrance, it might reasonably be said that in entering
into the contract he consented to pay for the land in-
cluded in the right of way; and we conclude that the
fact that the vendees in the case cited had accepted
deeds was a potent factor in inducing the court to hold
that they could not have an abatement of the purchase
price. Whatever the reason for the opinions, we are
not disposed to extend the doctrine laid down in these
cases so as to embrace an executory contract like the
one before us."

In the case of Fuson v. Chestnut, *supra,* without set-
ting forth the facts by which the question was presented,
this court in touching upon the question here involved,
says:

"It appears, however, that, although, by the terms of
the title bond, the purchase price was to be paid when
the title was perfected, James M. Hays thereafter ac-
cepted a special warranty deed from Chestnut and wife
to the land in question, and this deed contained no pro-
vision in regard to perfecting the title. The effect of
the special warranty was simply to warrant the title
against D. T. Chestnut and those claiming under him.
We are, therefore, of the opinion that the title bond was
merged into the deed, and the latter now constitutes the
sole agreement between Chestnut and Hays."

In the case of Vicroy v. Vicroy, a similar question
was involved. A suit had been filed to recover purchase
money notes and a defense was made to the effect that
a deed which a wife executed to her husband created a
cloud upon the title, but inasmuch as the wife could not
convey land direct to her husband this court determined
that such deed constituted no cloud and that the exist-
ence of the deed presented no defense, but it also stated
in addition:

"That the vendee had notice of the existence of this
deed at the time he accepted his deed and this fact

would prevent him relying upon the existence of that old deed as a defense in a suit to collect the purchase money.''

We do not regard the authorities cited by appellant as conflicting with those hereinbefore considered. One of the leading cases upon which he relies is that of Rush v. Carpenter, 158 Ky., 672. That suit was brought to recover the amount of an unpaid purchase note, and the defense was that the note had been executed as part purchase for a farm supposed to contain 60 acres, more or less. It was alleged as a defense that the vendor represented and warranted that there were that number of acres in the tract and that the appellant believed it and relied upon it, but that it was subsequently discovered that there were only 41 3-5 acres in the farm. The court allowed an abatement for this deficiency, but it said nothing in the opinion militating against the views hereinbefore expressed relative to the facts of this instant case. On the contrary, it based its opinion solely upon the fact, not only that there had been deceit and fraud practiced by the vendor, but also that the vendee was ignorant as to the number of acres in the tract at the time he accepted the deed and executed the notes, and this court in allowing relief to the vendee because of the deficiency, said:

''Relief against the same (deficiency) will be granted, if at the time the parties are ignorant of the deficiency, or the vendee is deceived by the misrepresentation of the vendor as to the quantity.''

The case of Jenkins v. Jenkins, 153 Ky., 163, also relied upon by appellant is likewise not in point. There the land was bought by the acre, and although a portion of it was not owned by the vendor at the time, still the vendee had a right to presume that the vendor would acquire title to that piece of land and thus be enabled to comply with his contract, agreeing to convey the entire body, including this small tract, and if he should not do so, to respond in damages for his failure.

There was no particular piece of land or any quantity of land in the instant case which the appellant intended to buy, or expected that it was buying and which it failed to obtain by the deed made to it by appellee. The offer of purchase was for the plot of land which the appellee owned west of Floyd Street and for no other land; and it must be remembered that the only place in

which there is any attempt to state the number of acres in this plot of ground is found in the offer of appellant to purchase same. Nowhere does it appear that appellee ever represented any particular number of acres to be contained in the plot. Moreover, in the Jenkins case the vendee undertook to convey all of the land within certain boundaries, but it turned out that he did not own all of the land within the boundaries. Not so in the instant case. The appellee owned all of the land within the boundaries set forth in the deed, but which, however, did not include the number of acres stated in the offer to purchase, but the title to all of the land embraced in the boundaries was owned by the appellee and it conveyed all that land to the appellant. It obtained by the deed the specific piece of property about which all of the negotiations had taken place, and with full knowledge of the number of acres which it contained, it accepted the deed without protest and the terms of the purchase were fully complied with by it.

We are convinced, not only from the authorities, *supra,* but from the general principles of the law that the appellant should be required to pay the purchase price without any abatement on account of the alleged shortage. To hold otherwise would force the appellee to accept less for the plot of ground sold than it was willing to take. The price which it had fixed for this particular piece of ground was $80,000.00 regardless of the number of acres that it contained, and to force it to accept a reduction from the price agreed on for this piece of property, amounting nearly to $7,500.00, would be nothing short of the court making a contract for it radically different from what it was willing to take, and a contract different from what it did actually make.

The appellant is in no attitude to insist upon the relief which it seeks and the judgment is affirmed.