## Caudill, et al. v. Bernheim, et al.

(Decided March 24, 1922.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division),

1.  Vendor and Purchaser—Deficiency in Acreage—Right to Relief.—Even though the sale of land be in gross, the purchaser is entitled to compensation where the deficiency is as much as or more than ten per cent, and this rule applies to oil and gas lands as well as to agricultural lands, since acreage is just as important an element in the value of the former as in the value of the latter.

2.  Vendor and Purchaser—Deficiency in Acreage—Estoppel by Acceptance of Deed.—The acceptance by the purchaser of a deed describing the land in general terms, without specifying the number of acres, but conveying less land that the quantity represented in the option contract and prior negotiations, will not preclude him from relying upon the mistake in quantity, there being no conflict between the deed and the representations as to quantity theretofore made.

3.  Vendor and Purchaser—Deficiency in Acreage—Right to Relief.—In the option contract and prior negotiations the vendor represented the land as containing 640 acres more or less, and it was valued at $15,000.00, or at the rate of $23.43 an acre. The deed conveying the land described it in general terms without specifying the number of acres. There was a shortage in the quantity represented of 185.7 acres: Held, that the purchaser was entitled to recover for

that number of acres at the rate of $23.43 an acre, or the sum of $4,350.95.

4.  Vendor and Purchaser—Deficiency in Acreage—Acceptance of Deed for Less Quantity Than Represented—Merger—Estoppel.—In the option contract and prior negotiations, a tract of land was represented as containing 150 acres more or less. Thereafter the purchaser accepted a deed which described the land as containing 100 acres more or less, and the land actually contained 107 acres: Held, that as there was no allegation of fraud or mistake in the execution of the deed, all prior agreements and negotiations were merged in the deed, and its acceptance by the purchaser precluded him from recovering for any deficiency based on prior representations.

EDWARDS, OGDEN & PEAK for appellants.

BLAKEY, QUIN & LEWIS and SELIGMAN & SELIGMAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In the month of August, 1915, R. E. Caudill, J. T. Caudill and W. A. Caudill gave I. W. Bernheim a written option by which they proposed to convey him two tracts of land in Morgan county, and five-twelfths of the capital stock of the Kentucky-Pennsylvania Oil & Gas Company, of the par value of $30,000.00, at the price of $55,000.00, the principal portion of which was to be paid by the conveyance to the Caudills by Bernheim of his farm of 347 acres in Shelby county, at the price of $140.00 an acre, while the balance was to be paid in cash. The real property covered by the option was described as follows:

"(a) Six hundred and forty (640) acre farm, more or less, one-half mile from railroad located in Morgan county, etc.

"(b) One hundred and fifty (150) acre tract of land with oil rights, etc."

On September 2, 1915, another option fixing the purchase price of the property at $47,500.00 was given Bernheim, and on September 4th, a third option was given, fixing the purchase price at $45,000.00, but leaving the price of the Bernheim farm unchanged. This option was accepted by Bernheim, and on September 11, 1915, the Caudills delivered the oil stock and tendered to Bernheim two deeds conveying the two tracts of land to the Enterprise Realty Company. The deeds were accepted. The description in the deed to the larger tract was as follows:

"Situated, lying and being in the state of Kentucky in Morgan county, Kentucky, on the right fork of Cannell creek known as Stacey line and bounded and described as follows, to-wit:

"Beginning at a double cottonwood and pine corner to Lucinda Day, thence with the meanders of the ridge to Jackson and Bryce Stacey line; thence with their line to Greenville Stacey line; thence with his line to Lucinda Day line; thence with her line to the beginning corner; excepting therefrom a small tract heretofore sold and conveyed to Sanford Day."

The smaller tract was described as follows:

"Lying and being in the county of Morgan and state of Kentucky, and on the Lunch fork of Cannell creek and bounded and described as follows, to-wit:

"Beginning at the mouth of Lunch fork at J. D. Nickell's line; thence with said line to a spotted oak on end of point on left hand side of the branch; thence with the same line up the branch to a set stone; and agreed corner; thence crossing the branch and up the hill with a fence agreed line, to a set stone, on top of the point; thence with the meanders of said ridge, to A. T. Nickell's corner; thence with the meanders of said ridge and A. T. Nickell's line to D. M. DeBoard's corner; thence with the hill to the branch and up the hill on the opposite side to a large rock on top of the point; thence up the point on the top of the ridge to a chestnut; thence down the ridge with D. M. DeBoard's line to Burton's line; thence with his line to a hickory, corner to S. D. Wells, and Granville Haney, thence with the meanders of said ridge to the head of Splash Dam hollow; thence down the hollow of the creek; thence up the creek to the beginning, containing one hundred acres more or less, being the same property conveyed to Mahaley Caudill by deed dated April 8, 1913, and recorded in Deed Book No. 38, page 460, Morgan county records."

Some time later Bernheim had the two tracts surveyed, when it was ascertained that the larger tract contained only 454.2 acres instead of 640 acres as represented in the option, while the smaller tract contained only 107 acres instead of 150 acres as represented in the option. About two years after the acceptance of the deeds, Bernheim brought suit to recover for the deficiency in the two tracts, relying upon fraud and mutual mistake. On final hearing the chancellor rendered judgment in favor of

Bernheim and the Enterprise Realty Company for $7,217.16. The defendants appeal.

In the early case of Harrison v. Talbott, 2 Dana 266, the court laid down the following rule:

"Sales in gross may be subdivided into various subordinate classifications: First, sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres. Second, sales of the like kind, in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract. Third, sales in which it is evident from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth, sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud. Such was the contract in the case of Brown v. Parish, lately decided by this court, ante 6.

"But in sales of either of the latter kinds, an unreasonable surplus, or deficit, may entitle the injured party to equitable relief, unless he has by his conduct waived or forfeited his equity."

Appellants insist that this case falls within the second classification, and rely upon the following facts: Before closing the trade Bernheim examined the lands in company with a coal expert and the boundaries of the two tracts were pointed out to them. Bernheim learned that each of the tracts contained cannel coal, and that a corporation had been created and was erecting a plant to manufacture German dyes from cannel coal. He further discovered that a coal company was mining coal on a tract of land adjoining the larger tract, and he expected, when that coal was exhausted, to make a contract with the company to mine his coal. He also knew that there

were two producing oil wells on the smaller tract, from which he would draw a royalty of about $100.00 a month. In view of these circumstances, he had visions of the great wealth that would come from the development of the property, and the number of acres played no part in the negotiations.

On the other hand, Bernheim insists that the case falls within the third classification, and relies upon the following facts: In the option contracts the larger tract was represented as containing 640 acres, while the smaller tract was represented as containing 150 acres, and the same representations were made throughout the entire negotiations. R. E. Caudill exhibited to Mr. Bernheim, before the option was closed, the deeds to the two tracts of land, in which the larger tract was described as containing 640 acres, and the smaller tract as containing 150 acres. When Bernheim examined the land, he did so for the purpose of determining its character, and not its acreage, and could not have estimated the acreage if he had wanted to do so.

In view of the fact that when this state was first settled, and for quite a while thereafter, land had but little value and surveys were inaccurate, quantity played but a small part in the sales of land. As said in Young v. Craig, 2 Bibb 270, "There was particularly in the sales made at an early period in this country great liberality of admeasurement frequently allowed by the seller and expected by the purchaser." That being true, the parties were always presumed to contemplate a surplus or deficiency no greater than usual in conveyances made about the same time. Thus in Rogers v. Garnett, 4 Mon. 269, the court refused to decree the vendor compensation for a surplus of 300 acres in a sale of 1,700 acres made during the year 1794. But since that time conditions have changed and lands have become so valuable that quantity is always an important element in every sale. Hence a surplus or deficiency, that was regarded as usual many years ago, is now looked upon as being so large that the parties did not intend to risk it. Indeed, we have held in numerous cases that the rule of ancient times no longer applies, and that the purchaser is entitled to compensation, even though the sale be in gross, where the deficiency was as much as or more than ten per cent. Boggs v. Bush, 137 Ky. 98, 122 S. W. 222; Hall v. Ely, 76 S. W. 848; Collins v. Stodghill, 79 S. W. 185; Landrum v. Wells, 122 S. W. 213; Paisley v. Hatter, 143 Ky. 643,

137 S. W. 250. It is true that only agricultural lands were involved in the above cases, but as acreage is just as important an element in the value of coal and oil lands as it is in agricultural lands, we see no reason why a different rule should apply to sales of coal and oil lands.

The deed to the larger tract merely described the land conveyed in a general way without specifying the number of acres conveyed. That being true, there was no conflict between the deed itself and the representations as to quantity theretofore made, and the acceptance of the deed did not preclude Bernheim from relying upon mistake in the quantity. It is conceded by all the parties that the larger tract was valued at $15,000.00, or at the rate of $23.43 an acre. As there was a shortage of 185.7 acres, or about 29 per cent, it follows that plaintiff was entitled to recover for that number of acres at the rate of $23.43 an acre, or the sum of $4,350.95.

With respect to the smaller tract, a different case is presented. While it is true that this tract was represented in the option and prior negotiations as containing 150 acres more or less, Bernheim accepted a deed which described the land as containing 100 acres, more or less, and the land actually contained 107 acres. There being no allegation of fraud or mistake in the execution of the deed, the case is one where all prior agreements and negotiations were merged in the deed, and its acceptance by Bernheim precludes him from recovering for any deficiency based on prior representations. Creekmore v. Bryant, 158 Ky. 166, 164 S. W. 337; Louisville Soap Co. v. Louisville Cotton Oil Co., 168 Ky. 340, 182 S. W. 181.

Wherefore the judgment is reversed and the cause remanded with directions to enter judgment in conformity with this opinion.