## Combs et al. v. Morgan et al.

May 4, 1948.

Rehearing denied June 25, 1948.

712

Barney W. Baker for appellant.

Don A. Ward and B. P. Wootton for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

## Statement of the Case

Appellants are four children of John Morgan, deceased, and his wife, Mary Morgan, who died intestate, a resident of Perry County, Ky. on May 8, 1936. This is a suit by these four children, all sui juris, and their respective spouses, against their step-father, D. D. Morgan, appellee, and others claiming an interest in the property herein involved. The suit is one for sale and division under Sec. 490(2) of the Civil Code of Practice and involves a 38 acre tract of land on Amos Fork of Big Creek in Perry County, Ky.

## Facts in the Case

John Morgan, father of appellants, died the owner of a tract of land in Perry County, of which the 38 acre tract described in the petition is a part. In the division of his lands among his heirs the tract herein involved was deeded to Debbie Smith, one of his children. This is described in the record as the "home place" and apparently the family continued to reside there. After the death of John Morgan, his widow, Mary Morgan, married appellee, D. D. Morgan, and he moved to and continued to reside at the home place, the tract involved herein. Apparently he was anxious to obtain an inter-

est in this tract as the home of himself and wife and before Debbie Smith had been awarded this tract of land in the division of her father's estate, he had her execute to him alone a bond for deed. This instrument is dated April 11, 1929, at which time Debbie Smith was a minor, about 19 years of age, and is captioned, "Bond for deed from minors, when they reach their maturity." This instrument is signed and acknowledged by Debbie Smith and her husband, Rufus Smith, and is in the form of a regular deed, not in the form of a bond for deed as it is designated in its caption. The description is only in general terms, is called 40 acres, more or less, and is described as being of the grantor's ¼ interest in the boundary described and contains no back reference, she not yet having received title to this specific tract. The consideration set out in this instrument is "a certain tract of land, valuation of $500.00."

Subsequently, on February 25, 1930, Debbie Smith and Rufus Smith, her husband, by outright deed conveyed to D. D. Morgan this 38 acre tract, the stated consideration being "exchange of real estate." The description in this deed is a detailed one by metes and bounds, apparently resulting from an accurate survey. No back reference is given in this deed except this "being the same land inherited from the estate of John W. Morgan." This deed is properly signed and acknowledged.

Subsequently, on December 19, 1931, Debbie Smith and Rufus Smith, her husband, executed a third deed conveying the same 38 acre tract, this time the grantees named in the deed being D. D. Morgan and Mary Morgan, his wife, the consideration stated in this deed being "one dollar and other land in hand paid." This deed was properly signed and acknowledged and the back reference given was "being the same land conveyed by John Morgan's heirs and the court to grantor Debbie Morgan in John Morgan's estate herein by deed dated May 8, 1930, and recorded in Deed Book 58, page 167, Perry County Court Clerk's Office."

### The Questions Involved

The old question bandied about some years ago, "How old is Ann?" is little less a mystery than is the question in this case, "How old is Debbie Smith?" It

is quite evident that she was not of age when the first deed or bond for deed was executed on April 11, 1929, since that instrument states it was a bond for deed from minors. There is nothing on the face of deed No. 2, dated February 25, 1930, to show her age and if on that date she and her husband, Rufus Smith, were of age and she had title to the property, D. D. Morgan acquired full title to the property involved herein, appellants herein would have no interest in the property as heirs at law of their mother, Mary Morgan, and there would be no basis for this suit for sale and division. Appellants did not see fit to take any proof on this important point. They simply based their suit on deed No. 3, dated December 19, 1931, under which their dead mother, Mary Morgan, apparently acquired a one-half interest, leaving on D. D. Morgan the burden of showing that Mary Morgan had no interest in the property because of his superior and complete title resulting from deeds 1 and 2. He did not meet this burden by any specific proof that Debbie Smith was of age when she executed either the first or second deed. His evidence tends to show the contrary and in his own testimony he says that at the time of the making of the second deed she and her husband made an affidavit that they would make him another deed like this one when she became 21. Then in his testimony he says, "on the very day," evidently referring to the day on which Debbie became 21, he had Lige Feltner, deputy county clerk, to come and make a new deed, evidently referring to deed No. 3, dated December 19, 1931, in which deed Mary Morgan was named as grantee. In his opinion and judgment the Chancellor indicates that Debbie was not of age when she executed deed No. 2, as indicated in the following excerpt from his opinion: "The record does not show just what the age of Debbie Smith was at the time of the execution of either of these last named writings but it is apparent from the record, since the first one was denominated as a bond for deed from minors and since D. D. Morgan testified that at the time of the execution of the second one of date Feb. 25th, 1930, that she made an affidavit that she would make another deed to him when she arrived at the age of twenty one, that she was under the age of 21 on Feb. 25th, 1930."

This is all the information we have in the record

to show that Debbie Smith was not of age when she executed deed No. 2, dated February 25, 1930, and that she executed deed No. 3, dated December 19, 1931, on her 21st birthday, as is also stated as a fact in appellants' brief.

The Chancellor dismissed appellants' petition on the ground that they had no interest in the property in question as heirs at law of Mary Morgan and held that Mary Morgan acquired no interest in this property by virtue of the deed executed to D. D. Morgan and Mary Morgan under the deed from Debbie Smith and Rufus Smith, dated December 19, 1931. The Chancellor seems to base his decision on the validity of the bond for deed, dated April 11, 1929, (No. 1), and on the deed of February 25, 1930, (No. 2), and holds that this gives D. D. Morgan complete title, as shown from the following excerpt from his opinion: ''The Court finds from the evidence that prior to the execution of this deed (No. 3, dated Dec. 19, 1931) the defendant, D. D. Morgan purchased this land from Debbie Smith and Rufus Smith with his own money and Mary Morgan did not pay any part of the purchase price and that on the 11th day of April, 1929, they executed and delivered to D. D. Morgan a writing which is headed 'Bond for deed from minors when they reach their maturity.' This writing, however, is not a bond for a deed but is a straight out deed of conveyance from Debbie Smith and Rufus Smith to D. D. Morgan for the same land described in the petition and in the deed above referred to of date Dec. 19th, 1931. Then again on February 25th, 1930, Debbie Smith and her husband, Rufus Smith, executed and delivered to D. D. Morgan another deed for the same land and the name of Mary Morgan is not mentioned as grantee in this deed. * * * The court is of the opinion that D. D. Morgan already had the title to this land or the title which Debbie Smith and Rufus Smith possessed on Dec. 19th, 1931, at the time of the execution and delivery of the deed to D. D. Morgan and Mary Morgan, and that this latter deed did not pass any title to Mary Morgan, and the Court is of the opinion that the execution of the latter deed of date Dec. 19th, 1931, was not disaffirmance by Debbie Smith of her former deeds to D. D. Morgan on account of her minority.'' (Parenthesis ours.)

## The Law Applicable

We cannot agree with the ruling of the Chancellor that the deeds of April 11, 1929, (No. 1), and of February 25, 1930, (No. 2), both made when Debbie Smith was under 21 years of age, passed the full, unrevokable title to D. D. Morgan or that the execution of the deed to D. D. Morgan and Mary Morgan of December 19, 1931, (No. 3) was not a disaffirmance by her of her former deeds to D. D. Morgan on account of her minority. In the first place Debbie Smith did not have title to the 38 acre tract when she executed the bond for deed and at best could only execute her bond for deed for her interest in her father's real estate, which had not yet been divided. That bond for deed roughly describes a 40 acre tract, not an accurate description of the 38 acre tract to which Debbie Smith later got title and which the bond for deed says is "¼ interest in the above described boundary of land and being parties of the first part interest in the John Morgan land." Furthermore at the time of the second deed of February 25, 1930, she still apparently had no title to the specific 38 acre tract described in that deed, as no back reference is given in that deed, and the back reference of the third deed of December 19, 1931, which also describes the 38 acre tract, shows she acquired title to it by deed dated May 8, 1930. Therefore the only thing she could have conveyed on February 25, 1930, would be her undivided ¼ interest in her father's estate, not a particular 38 acres which she was later to get and which she did get before she made the third deed of December 19, 1931.

But assuming that she had title to the 38 acre tract when she executed the bond for deed of April 11, 1929, and the deed of February 25, 1930, both deeds, while not void because of her infancy, were clearly voidable upon her becoming of age, a principle of law well settled in Kentucky as elsewhere. Forsee's Adm'x v. Forsee, 144 Ky. 169, 137 S. W. 836, and cases therein cited. She had an election after her disability was ended to affirm or void her prior deeds executed during infancy. After arriving at age an infant may disaffirm a contract made during infancy for the sale of real estate, either executed or executory, by merely making another conveyance of the same property to a third person, and it is unnec-

essary for him to refund to the first person the consideration received in order to render the second conveyance valid. Ison et al. v. Cornett, 116 Ky. 92, 75 S. W. 204, 25 K. L. R. 366.

Certainly a new deed executed to the same person to whom the other voidable deeds had been made but including his wife in the new one and the acceptance by that person of the new deed with the additional grantee would be a disaffirmance of the old voidable deeds and the affirmance of the new one. Indeed, under the facts in this case the disaffirmance of the old voidable contract and the affirmance of the new one can be sustained on the basis of mutual agreement. "If a new agreement be made, which is inconsistent with the former agreement, so that they cannot subsist together, the old one is impliedly discharged by the new one." Am. & Eng. Ency. of Law, 1st Ed., Vol. 3, p. 891. In Warvelle on Vendors, Vol. 2, p. 970, it is said: "One of the most common forms of rescission by mutual agreement consists of what is termed novation; that is the entering into a new contract which takes the place of the original one and in which it is merged and extinguished. If the new contract in express terms rescinds the old one, no question can be asked; yet the same result follows, as a necessary implication, and takes place by operation of law, without any express agreement to that effect, whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance."

In this case as a sort of binder D. D. Morgan had first secured what he designated as a bond for deed of a minor for Debbie Smith's ¼ interest in the property. Then to further secure himself he got from her while she was still an infant a deed in due form for the specific 38 acres she was supposed to get from her father's estate at the same time obtaining from her an affidavit that when she became of age she would execute still another deed for the same property, which she later did. How could it be said, with any show of reason, that Morgan acquired title by either of the first two deeds or that the last deed was not a rescission of the old agreements and an affirmance of the new agreement by mutual contract and to carry out the very arrangement he, himself, had made?

In the light of other evidence in the case and the surrounding circumstances we do not give great weight to Mr. Morgan's testimony that he did not intend that the name of his wife, Mary Morgan, be placed in the last deed of December 19, 1931. The property had come to her daughter, Debbie Smith, through Mary Morgan's former husband, John Morgan. It was the home place in which she had lived and raised her children. What is more natural than that she should insist that this property be placed partly in her name so that she would have an interest in her home? Nor do we give great weight to his testimony that he did not even know that his wife's name was on the deed. He arranged for the deputy county clerk, Lige Feltner, to draw the deed and come to his home for its execution. Is it reasonable to believe that the clerk would have inserted the name of the wife without Mr. Morgan's suggestion? Furthermore at the same time and place Mr. Morgan had Lige Feltner draw a joint will whereby he and his wife, Mary Morgan, willed this particular property to their only child, Harold B. Morgan. Both Mary and D. D. Morgan executed this will. Was there any reason for Mary Morgan to execute this joint will leaving this property to their only child if Mary had no interest in the property? It is true the will was not probated after Mary's death and it is now too late to probate it as to her, she having died in 1936, and it has no effect on this property now, but it does indicate that D. D. Morgan knew that his wife's name was put in the deed which was executed on the same day as the will. It is also shown by the evidence that Mr. Morgan had this last deed recorded, got the original deed from the clerk's office, has kept it all these years in a leather case in which he keeps his papers about his home and store and has sold off part of this property, at which time this deed would likely be used in drawing the deeds to the property he sold off. Is it reasonable to suppose that all this could have been done without his knowing his wife's name was on the deed even though his eyesight was poor and he is now almost blind, as he testifies? We can accept Mr. Morgan's testimony that his wife Mary did not put any money of her own into this property but that he traded for it other property which he owned and which was in his own name. This does not change our conclu-

sion that she had a joint interest in the property under the deed, since her title and interest in the property may rest on other considerations.

In their answer appellees set up a plea of adverse possession but make no reference to such claim in their brief. Clearly there could be no adverse possession as against his co-owner Mary Morgan, and since her children acquired no interest in the property until after her death in 1936, appellees could claim no title by adverse possession as against them.

### Conclusions

On the whole case we are of the opinion that Mary Morgan acquired title to a one-half interest in the property described in the petition by virtue of the deed dated December 19, 1931, and that her heirs at law acquired title to that interest upon her death on May 8, 1936, and that the Chancellor erred in dismissing their petition for sale of said property for division. The judgment of the lower court is therefore reversed.

Judgment reversed.