Max KRUMHOLZ and Emil Moosmann,
Plaintiffs

v.

James Beckham GOFF and Mary Lois
Goff, Defendants.

Max KRUMHOLZ and Emil Moosmann,
Plaintiffs

v.

F. T. CANTRELL and Mary Cantrell, his
wife; Finis Durrett and Hazel Durrett,
his wife; Virgil Price and Frances
Price, his wife; Wayne D. Durrett, an
infant, by and through F. T. Cantrell,
his statutory guardian, and F. T. Cant-
rell, Statutory Guardian of Wayne D.
Durrett; Walter Pickett and Ann Eliza-
beth Pickett, his wife; William N.
Theiss and Jeanne Theiss, his wife; H.
A. Clark and Pet Clark, his wife; Otis
E. Gilpin and Beulah Gilpin; and
Walker Chenault, Defendants.

Nos. 697, 698.

United States District Court
W. D. Kentucky,
Bowling Green Division.

Aug. 4, 1961.

Robert M. Coleman, Coleman, Harlin & Orendorf, Bowling Green, Ky., Eugene H. Alvey, Louisville, Ky., for plaintiffs.

Robert M. Spragens, Lebanon, Ky., Earl S. Wilson, Bullitt, Dawson & Tarrant, Louisville, Ky., Joe Leary, Frankfort, Ky., for defendants.

SWINFORD, District Judge.

The plaintiffs in these consolidated cases are citizens and residents of New Jersey. The defendants are citizens and residents of the Western District of Kentucky. The plaintiff, Krumholz, a certified public accountant, is, and was at all times referred to in the record, a person of experience in the leasing and developing of oil producing properties. Throughout the record it is shown that he was the principal spokesman and representative for all parties plaintiff.

Activity in the oil fields of Green County, Kentucky, brought Mr. Krumholz and his co-plaintiff, Mr. Moosmann, to that county apparently for the purpose of making investigation and investment in oil properties.

On January 1, 1959, they became acquainted with the defendant, James Beckham Goff, who was the owner of a 5/32 interest in what is known throughout the record as the Leachman lease. The area covered by this lease was in active development and contained twelve oper-

ating and producing oil wells and a thirteenth well was being drilled. Krumholz, Moosmann and Goff visited the site of the lease and Goff told the plaintiffs that the lease covered approximately 80 acres and was producing approximately 600 barrels of oil per day.

On January 2, 1959, the plaintiffs, Krumholz and Moosmann, became interested in purchasing from what is identified as the Cantrell group, defendants herein, their $\frac{17}{32}$ working interest in the Leachman lease. They obtained from this group an option to purchase such an interest in consideration of the sum of $5,312.50 cash in hand paid. The option provided that the plaintiffs should have a right to purchase all of the interests of the Cantrell group for the sum of $106,250, to be credited, if the option was exercised, with the cash payment. It further provided that the Cantrell group reserved $\frac{17}{64}$ of the oil produced from the lease until a total further consideration of $159,375 had been received from the sale of such oil but payable only from proceeds of oil produced if, as and when produced. As a further consideration it was provided that the option must be exercised on or before January 31, 1959.

The option contained the following provision:

"7. First Parties represent and warrant that the daily production on this lease is approximately 400 barrels per day, and Second Parties rely upon said warranty and representation in entering into this agreement."

The record discloses that this significant provision in the option was incorporated only after prolonged and serious discussion and consideration between the parties.

On January 3, 1959, the defendant, Goff, executed an option, with identical provisions as those contained in the Cantrell option, for his $\frac{5}{32}$ working interest in the lease. The only distinction between the Cantrell and the Goff option was in the different fractional interests and in the consideration paid. The plaintiffs paid to Goff $1,562.50 in cash with a deferred consideration of $31,250 (to be credited by the direct payment of $1,562.50). As in the Cantrell lease, there was to be a deferred consideration of $46,875 to be paid from oil if, as and when produced from the lease.

The plaintiffs immediately thereafter returned to New Jersey to interview their friends and clients in an effort to raise the deferred cash consideration for these two purchases. The record discloses that Mr. Krumholz stated that the warranty of the 400 barrel per day production from the lease was necessary in order that he might interest New Jersey investors and induce them to become partners.

By letter of January 14, 1959, written from their home in New Jersey, the plaintiffs, Krumholz and Moosmann, advised both Cantrell and Goff that they elected to exercise the option to purchase their respective interests in the Leachman lease and stated that the balance of the purchase price would be tendered to them at Greensburg (the county seat of Green County), Kentucky, on or about January 30, 1959, in accordance with the terms of the option.

On January 30, 1959, at Greensburg, Kentucky, the defendant, Goff, accepted the remainder of the agreed cash consideration and assigned his $\frac{5}{32}$ interest to the plaintiffs. The assignment set forth the description of the tract covered by the lease which concluded with the phrase "containing 80 acres, more or less". This document included all of the provisions of the option of January 3, 1959 except the warranty as to production of 400 barrels per day.

Due to their inability to raise sufficient funds, the plaintiffs were unable to complete the transaction with the Cantrell group and desired more time. By mutual agreement a document was drawn which was styled "Extension of Option". The instrument provided in part that in consideration of $5,000 "the date for the exercising of the option granted in paragraph 1 hereinabove is hereby extended to March 2, 1959." In the event the

plaintiffs exercised the option within the time provided, this sum was to be credited on the total purchase price.

On February 28, 1959, Krumholz and Moosmann, with their lawyer, met with the Cantrell group in Greensburg for the purpose of paying the balance of the money and closing the transaction. The record discloses that at some time during the interim between January 14, 1959, when the plaintiffs had exercised their option to purchase, and the meeting in Greensburg of February 28, 1959, the plaintiff, Krumholz, had obtained information from a reliable source that the Leachman lease was not producing and had never produced as much as 400 barrels of oil per day as the defendants had warranted in the original option. After some discussion on this point, it was agreed that the purchasers would be given all of the oil produced in the month of February, a circumstance which had not been contemplated by the parties in any of their previous agreements, and with this understanding the cash consideration was paid to the Cantrell defendants and the lease executed and delivered.

As in the Goff assignment, the Cantrell document also recited a metes and bounds description of the lease, ending with the same phrase "containing 80 acres, more or less". This assignment contained no warranty as to production.

The plaintiffs took possession of the leasehold on March 2, 1959. Almost immediately they became dissatisfied and on March 23, 1959, through their attorney, demanded the return of the cash consideration and for a rescission of both assignments. All of the defendants declined to comply with the plaintiffs' requests which resulted in these actions being brought.

The plaintiffs base their claim for rescission of each assignment on two grounds: (1) a material deficiency in the acreage covered by the lease amounting to a failure of consideration, and (2) fraudulent misrepresentation and breach of warranty as to the quantity of oil being produced on the leased premises.

The defendants in both actions have filed counterclaims for damages on the ground that the plaintiffs breached the implied obligation under the assignments to operate the existing wells in a proper and workmanlike manner and to further develop the leasehold. It is contended that such breach of obligation has resulted in a loss of one-half the proceeds of oil which was to be paid to them as deferred consideration for the assignments. They seek the full amount of the deferred considerations.

The court will first consider the claims of the plaintiffs in the order presented.

The record establishes the fact without question that the tract reported as containing 80 acres, more or less, had been reduced by approximately 10 acres by a conveyance of some years before the matters in controversy arose. It is also shown that the attorney for the plaintiffs made an examination of the title of the leasehold in January 1959 and that through oversight he failed to note that this 80 acre tract had been reduced by 10 acres and should have been reported to his clients as containing approximately 70.5 acres. The litigants in these actions caused separate surveys to be made of the leasehold. The plaintiffs' survey reported an acreage of 67.0 and the defendants' survey an acreage of 67.5. It thus appears and the court finds as a fact that the shortage of acreage can at most be only 3.5 acres.

■ It is well established in Kentucky as a rule of law to be automatically applied by the courts that equitable relief will be granted to a purchaser or a seller if the discrepancy in acreage is 10 per cent or over but denied if it is less than 10 per cent. It has been held that this rule applies not only for agricultural lands but also in the case of more valuable lands such as coal and oil lands. Caudill v. Bernheim, 194 Ky. 368, 238 S.W. 1041; 1 A.L.R.2d 9, 102, 104.

■ Since the court must recognize the requirement of the ten per cent deficiency rule and as the record does not justify a consideration of the exceptions

as set out in the recent case of Wallace v. Cummins, Ky., 334 S.W.2d 904, it would serve no purpose to belabor the point. The tract of land assigned should have been known to the plaintiffs, by reason of the record in the office of the county clerk, to have contained not more than 70.5 acres.

■ The claim of the plaintiffs that the defendants should be held to account on their representation and warranty that the lease was producing 400 barrels of oil per day is correctly taken in the light of all the evidence and reasonable inferences which may be drawn from it. The warranty is express, clear and was adopted and agreed upon by the parties after careful and penetrating consideration. With reliance upon this provision, the plaintiffs made representations to innocent investors back in New Jersey and Krumholz and Moosmann were themselves obviously deceived by the representations of the defendants. Whether the party making a false representation of a material fact knew it to be false or made the assertion without knowledge of whether it was true or false is entirely immaterial. Even if the material fact upon which the plaintiffs relied was a mistake it is equally conclusive for it operates as a surprise and imposition upon, as in this case, an innocent party. Foard v. McComb, 75 Ky. 723.

■ In seeking the rescission of a contract for fraud, the question is: did the plaintiffs act upon the information given, was it made for that purpose, and was it false? In this case all of these questions must be answered "yes" and the plaintiffs are entitled to relief no matter how firmly the defendants believe the falsehood to be true. Commonwealth for Use of Lynch v. Campbell, 231 Ky. 386, 21 S.W.2d 474; Kackley v. Webber, 310 Ky. 285, 220 S.W.2d 587, 9 A. L.R.2d 500; Goodin v. Page, 235 Ky. 54, 29 S.W.2d 581.

The defendants either knew or should have known that this leasehold had never come close to 600 barrels or 500 barrels or 400 barrels of oil per day as they represented to these plaintiffs. The record shows that it rarely produced as much as half of 400 barrels per day. To permit these defendants to practice such fraud would be a mockery of equity.

■ The court is familiar with the rule that written instruments merge all prior contemporary oral negotiations. I am not familiar with any rule which says that a later written instrument merges prior written instruments unless expressly so stated. By exercising its right of option on January 14, 1959, all considerations set forth in that option, as to the obligations of the respective parties, were consummated. As to the defendant, Goff, in Case No. 697, the transaction was completed with nothing remaining to be done, insofar as the agreement was concerned, on January 30, 1959. It is clear that the plaintiffs are entitled to a rescission of the Goff assignment, Goodin v. Page, supra, and a restoration of the total cash consideration paid therefor with appropriate credits allowed for any oil payments received after the deduction of legitimate expenses that have actually been paid for the maintenance of the leasehold. Credits and expenses are to be computed on a pro rata basis.

■■ As to the Cantrell group, defendants in Case No. 698, the circumstances up until January 30, 1959, are identical with the Goff case. On that day, however, the parties entered into a new agreement. Whether it is to be called an extension of the original option or given some other name is of no consequence. Equity is not concerned with technicalities when the justice of the cause is clear and the intention of the parties can be given proper legal effect. On January 30, 1959, the plaintiffs stated that they were unable to make the final cash payment in accordance with the terms of the original agreement of January 2, 1959, and that they would have to have additional time. They were granted that additional time upon the payment to the Cantrell group of $5,000. A new writing was then executed. This was in effect a novation of the contract of purchase (which the orig-

inal option of January 2, 1959, had become upon its exercise by the plaintiffs, Klatch v. Simpson, 237 Ky. 84, 34 S.W. 2d 951) and amounted to a new option with all of the terms and conditions of the original option but speaking as of January 30, 1959, except as expressly modified. Combs v. Morgan, 307 Ky. 711, 211 S.W.2d 821.

Consequently, on this later date of January 30, 1959, there was an option to purchase with a production warranty of 400 barrels per day for which the plaintiffs had paid in cash the sum of $10,312.50. The average daily production for January was 303.26 barrels. On January 30, 1959, production was 147.61 barrels. The representation was therefore false and it was of a material existing fact. Coral Gables v. Barnes, 247 Ky. 292, 57 S.W.2d 18.

■ The plaintiffs, however, are not entitled to a rescission of the contract because of further circumstances which developed in the Cantrell case on February 28, 1959. At a meeting on that date, it is clearly established that Krumholz, who had had access to a geological report on the Leachman lease, knew that the lease was not producing 400 barrels per day or anything comparable to that amount. Krumholz stated that he would accept the assignment, even though he knew the production was down and not as warranted, if the Cantrell group would give the plaintiffs the proceeds from their interest in the February oil runs. According to Krumholz' testimony this was an oral promise and although not binding he was asking that they fulfill it in consideration of his accepting the assignment. The Cantrell defendants acceded to his wish and gave to the plaintiffs the proceeds from their interest in the February production. Obviously then the plaintiffs in executing this assignment did not rely on any warranty of production.

The plaintiffs in Action No. 698 are not entitled to recover since they paid for the assignment with full knowledge of the falsity of the representations in both of the options. The plaintiffs, therefore, forfeited any right which they may have had to rescind the option and have restored to them the consideration therefor. The complaint in Action No. 698 should be dismissed at the cost of the plaintiffs.

■ The counterclaims of the defendants remain to be considered. They seem to place their principal reliance on Fox v. Buckingham, 228 Ky. 176, 14 S.W.2d 421 and 237 Ky. 415, 35 S.W.2d 897. In that case the sole consideration for the assignment of the lease was the express promise of the assignee to use one-half of the proceeds of the oil produced from the leasehold to defray the expenses of operating and developing it and the other half to pay certain debts of the assignor. It is elementary that the promise to devote a part of the proceeds to the expenses incident to development and operation of the leasehold implied a further promise to so develop and operate the said lease. This implied promise which the assignee admitted having breached seems to have been the premise on which the court found a contractual obligation to create a special fund for the purposes recited in the consideration for the assignment, if by reasonable diligence such a fund could have been so created.

■ The Fox case is clearly not in point. In the instant case the assignment provided that the deferred consideration was to be payable "out of oil only if, as, and when produced", that such deferred consideration did not "impose any implied obligation with respect to drilling or development", and that the intention of the parties was that it should be paid "only out of and to the extent of the proceeds from the oil produced * * * if, as, and when produced." Obviously, this language in the assignment expressly exempts the plaintiffs from any obligation to further develop the lease, and it impliedly negatives any suggestion of a contractual obligation to operate it. Assuming, however, that such an obligation to operate the lease may be implied, the actions of the plaintiffs in giving timely notice of their intention to abandon active participation

in the operation of the lease afforded the defendants ample opportunity to seek judicial relief. Having failed to timely avail themselves of any provisional remedy, the defendants cannot now be heard to complain of their alleged losses.

An equally compelling reason for the denial of the counterclaim is found in the fact that the plaintiffs, after taking possession of their interest in the leasehold, continued to operate it in the same manner and with the same pumper as had the defendants, until sometime in March, 1959, when they gave timely notice to the owners of the remaining $^{10}\!/_{32}$ of the working interest of their withdrawal from active participation in the operation of the leasehold. These part owners were requested by the plaintiffs to assume full management of the lease and acquiesced therein. Such assumption of active management by the other owners, which change of management the defendants must be considered to have ratified by their failure to make timely objection, must in equity relieve the non-resident plaintiffs of any alleged breach of duty to efficiently operate the lease, even if it be assumed that such a duty existed under the assignment.

The counterclaims in Actions No. 697 and 698 should be dismissed.

### Supplemental Memorandum

The court now has before it the motion of the defendants, James Beckham Goff and Mary Lois Goff, in Civil Action No. 697, of these consolidated causes, to be permitted to file a brief tendered on July 22, 1961. The motion is objected to by the plaintiffs. Notice was given to the plaintiffs by the defendant, Goff, for a hearing on the motion on the 13th day of November, 1961, at the hour of 9:00 o'clock, A.M., Central Standard Time.

All counsel of record and the parties are fully advised of the steps that have been taken in these consolidated cases. Ample time was given for briefing and all counsel reported to the court that briefing was concluded and the case was ready for submission. The case was submitted to the court on January 12, 1961. On motion of the parties, oral arguments were had before the court on July 10, 1961.

In view of this background, the court feels that it is unfair to the litigants to delay further determination of the issues involved until November 13, 1961, and sustains the motion to file the brief tendered on July 22, 1961. The plaintiffs are well within their rights by strenuously objecting to the filing of this brief but rather than to delay the ultimate determination of the case its filing is permitted. Because of the conclusions of the court, it is not necessary to give additional time to the plaintiffs to file an answering brief:

With one exception this brief is a review, reargument and full discussion of all of the defenses which were presented by the defendant, Goff, in his original brief and oral argument. I am this day filing a memorandum which the court had dictated and which had not been fully prepared prior to the filing of this supplemental brief. I do not propose to again review the findings of fact set forth in it on the question of fraud except to point out that the record is convincing and overwhelming of the fact that the quantity of oil being produced from the leasehold fell far short of the guarantee contained in the option. From the whole record of the evidence it can only be reasonably concluded that this leasehold did not at any time produce 600 or 500 or 400 barrels of oil per day or anything approximating these figures.

The evidence discloses that Goff repeatedly stated and represented to the plaintiffs that the lease was producing 600 barrels of oil per day. When asked to put this in writing he declined. He further declined to guarantee 500 barrels per day and only upon a statement from the plaintiffs they would have to have a guarantee and warranty, he reluctantly warranted and guaranteed 400 barrels per day. False representations made recklessly constitute such fraud as would authorize a rescission of the contract where they are relied upon by an inno-

cent party. Kackley v. Webber, 310 Ky. 285, 288, 220 S.W.2d 587, 9 A.L.R.2d 500.

All of Goff's big talk about production from his first acquaintanceship with the plaintiffs was but a deliberate attempt to arouse the minds of the plaintiffs to an overwhelming desire to purchase his lease. It was his method of salesmanship and a part of his plan and scheme to make a profitable sale. It can easily be inferred that it was from this cue that the Cantrell group got their idea of claim of production far in excess of reality. Proof of production of 400 barrels per day should not be difficult if such was the fact. An equitable court should not be called upon to sustain a warranty of quantity that is so extremely difficult of proof on the part of those claiming it. Taking the evidence in its most favorable aspect to Goff, if his approximation of 400 barrels per day for a very short period of time can be urged upon the court, sufficient to sustain this warranty, then guarantees of quantity in oil leases are of little value. The whole evidence and all reasonable inferences which may be drawn from it convince me beyond doubt that this leasehold neither on the day of the execution of the option nor at any other time produced approximately 400 barrels of oil per day. The defendant, Goff, makes strenuous argument as to the amount of oil sold at a given time during the month of January. At another place he argues that the amount of oil sold is of no consequence and with this last argument the court is in part agreed. Much is made of the fact that sales records cannot be accurate as to evidence of daily production because it is not shown how much oil was on hand from previous pumpings or how much pumping may have been done on a particular day.

The one point to which this supplemental memorandum should be addressed is the legal argument appearing at pages 22–28 of this final brief. It is urged that by remaining silent as to any adjustment, dissatisfaction or intention to rescind as to the defendant, Goff, at the meeting of February 28, 1959, the plaintiffs impliedly ratified and reaffirmed their assignment; that by saying they would go ahead with "the deal" with the Cantrell group they thereby meant the entire "deal" which included the Goffs; that if the plaintiffs are sufficiently estopped to rescind as to the Cantrell group, the same facts and information put a duty upon the plaintiffs to rescind and restore Goff to status quo and they are estopped by their failure so to do.

In addition it is argued that the plaintiffs affirmatively reaffirmed, ratified and honored "the deal" with Goff by recognizing and paying, in accordance with Paragraph 4 of the option, his demand for $345.40 expended by him in equipping the thirteenth well on the leasehold property; that in addition to these facts, the plaintiffs have received and kept a portion of the February oil payments to them under the terms of the assignment executed January 30, 1959; that they continued to take oil payments both before and after the suit was filed; and that they did not timely tender or offer to tender back the property.

It is the judgment of the court that there is a distinct difference between the Cantrell group and the Goffs. It must be borne in mind that this option did not merely misrepresent a material fact but it contained an express warranty which was demanded by the plaintiffs as a guarantee to enable them to raise money to purchase the lease. Much discussion was had on the occasion of and before its execution and the parties were fully advised. They retreated from their vaunted claim of 600 barrels per day and 500 barrels per day and finally executed a written warranty that the leasehold had a daily production of 400 barrels per day and added to that the following: "and Second Parties rely upon said warranty and representation in entering into this agreement".

Such a statement is not merely a misrepresentation. It is a part of the contract; it is a condition or warranty and its falsity does not effect the formation of the contract but operates to discharge the injured party from his obligation or

gives him a right of action based on the contract for loss sustained by reason of the untruth of the statement. The contract with the Goffs was no longer wholly executory. It had been partly performed. The plaintiffs had paid the whole of the cash purchase price before learning of the deceit. They were faced with something of a dilemma. They had completed their part of the contract insofar as the payment of the purchase money was concerned on January 30, 1959, and had received the proceeds of the $\frac{5}{32}$ interest for the February production. The Goffs had their money and were making claim for additional sums for the drilling of the thirteenth well. The plaintiffs either had to pay the sum or proceed to a lawsuit with the Goffs. They were, therefore, apparently trying to make the best of a bad bargain for the relatively small sum of $345.40 to protect an investment of something over $32,000. Both parties were standing on the terms of the option of January 3, 1959, which was still in part executory.

A court of equity will not preclude these plaintiffs from maintaining an action for fraud even though they completed their contract. Where a representation to a purchaser amounts to a warranty of title, value or quantity, he may, without waiving the breach of the warranty, execute the contract and sue for the breach or, as said by the text writer in 24 Am.Jur. Sec. 216, p. 47, "may perform the contract without waiving a breach of the warranty". McDonough v. Williams, 77 Ark. 261, 92 S.W. 783, 8 L.R.A.,N.S., 452, 7 Ann.Cas. 276.

Insofar as the defendant, Goff, is concerned, the plaintiffs were not accepting, conceding or waiving anything. They were standing on the guarantee and warranty of the contract by which Goff was demanding the payment to him of $345.40, a proportionate part of the drilling of the thirteenth well.

The Cantrells were on a different footing. They made a new contract with the plaintiffs in the nature of a novation or compromise which the plaintiffs entered into with knowledge of the falsity of the representation as to the daily production of oil.

In the Kentucky cases discussing this question, the court affirms the rule that when a party with full knowledge, or at least sufficient notice or means of knowledge of his rights and of all material facts, freely does what amounts to a recognition of the transaction as existing, the transaction, although originally impeachable, becomes unimpeachable in equity. Fletcher v. Wireman, 152 Ky. 565, 153 S.W. 982. Nevertheless, the court was careful to point out the distinction between a misrepresentation and a warranty or guarantee. McClurkin v. DeGaigney, 199 Ky. 458, 251 S.W. 217; Ades v. Wash, 199 Ky. 687, 251 S.W. 970.